PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, TX  75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § § § § § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | | Case No. 19-34054-sgj11 |
| Debtor. | | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § § § § § § § § | |
| Plaintiff, | | Adversary Proceeding No. 20-03190-sgj |
| vs. | | |
| JAMES D. DONDERO, | | |
| Defendant. | | |

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................ 3

    A.    An Independent Board is Appointed to Oversee the Debtor's Affairs; Mr. Dondero's Role Becomes Limited and Subject to the Board's Oversight; and Mr. Dondero is Later Asked to Resign .......................................................... 3

    B.    Mr. Dondero Interferes with the Debtor's Business and Instructs and Threatens Certain of the Debtor's Employees ..................................................... 6

    C.    The Debtor Demands that Mr. Dondero and his Affiliates Satisfy Certain Demand Notes, and Mr. Dondero Issues an Explicit Threat ................................ 8

III. LEGAL STANDARD ..................................................................................... 9

IV. ARGUMENT ................................................................................................. 11

    A.    The Debtor will Suffer Irreparable Harm in the Absence of Injunctive Relief ................................................................................................................... 12

    B.    The Debtor Demonstrates Likelihood of Success on the Merits ........................ 13

    C.    The Equities Strongly Favor the Debtor ............................................................ 14

    D.    Injunctive Relief Serves the Public Interest ....................................................... 15

V. CONCLUSION ............................................................................................... 16

DOCS_NY:41695.4 36027/002

## **TABLE OF AUTHORITIES**

### **CASES**

*Compass Bank v. Veytia,*
  EP-11-CV-228-PRM, 2011 WL 13234883, at *2 (W.D. Tex. Sept. 21, 2011)....................... 13

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.,*
  710 F.3d 579 (5th Cir. 2013) ............................................................................. 13

*Green v. Wells Fargo Bank, N.A.,*
  575 Fed.Appx. 322, 323 n. 3 (5th Cir. 2014)........................................................... 10

*In re Commonwealth Oil Ref. Co., Inc.,*
  805 F.2d 1175 (5th Cir. 1986) ........................................................................... 10

*In re Compton Corp.,*
  90 B.R. 798 (Bankr.N.D.Tex. 1988)...................................................................... 11

*In re FiberTower Network Servs. Corp.,*
  482 B.R. 169, (Bankr. N.D. Tex. 2012)........................................................... passim

*In re Hunt,*
  93 B.R. 484 (Bankr. N.D. Tex. 1988)............................................................... passim

*In re OGA Charters, LLC,*
  554 B.R. 415 (Bankr. S.D. Tex. 2016) ............................................................. passim

*In re Seatco, Inc.,*
  259 B.R. 279 (Bankr. N.D. Tex. 2001).................................................................. 11

*In re Timbers of Inwood Forest Assocs., LTD.,*
  808 F.2d 363 (5th Cir.1987) ............................................................................. 17

*Janvey v. Alguire,*
  647 F.3d 585 (5th Cir. 2010) ........................................................................ 13, 14

*La Union Del Pueblo Entero v. Fed. Emergency Mgmt. Agency,*
  608 F.3d 217 (5th Cir. 2010) ............................................................................. 10

*Lazarus Burman Assocs. v. Nat'l Westminster Bank U.S.A. (In re Lazarus Burman Assocs.),*
  161 B.R. 891 (Bankr.E.D.N.Y.1993)..................................................................... 16

*MacArthur Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.),*
  837 F.2d 89 (2d Cir.1988) ................................................................................ 10

*Miss. Power & Light Co. v. United Gas Pipe Line,*
  760 F.2d 618 (5th Cir.1985) ............................................................................. 10

*Moore v. Consol. Edison Co. of New York, Inc.,*
  409 F.3d 506 (2d Cir. 2005) ............................................................................. 11

*SAS Overseas Consultants v. Benoit,*
  No. 99–1663, 2000 WL 140611, at *5 (E.D.La. Feb. 7, 2000) ............................... 16

*Star Satellite, Inc. v. City of Biloxi,*
  779 F.2d 1074 (5th Cir. 1986) ........................................................................... 11

**STATUTES**

11 U.S.C. § 105 .......................................................................................................................... 9

11 U.S.C. § 362 ........................................................................................................................ 15

11 U.S.C. § 541 ........................................................................................................................ 17

**OTHER AUTHORITIES**

COLLIER ON BANKRUPTCY ¶ 105.03[1][a] (16th ed. 2012) ................................................. 13

**RULES**

Fed. R. Bankr. P. 7065 ........................................................................................................... 10

Fed. R. Civ. P. 65 .................................................................................................................... 10

DOCS_NY:41695.4 36027/002

**DEBTOR'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION AGAINST MR. JAMES DONDERO**

Highland Capital Management, L.P., the plaintiff in the above-captioned adversary

proceeding (the "Adversary Proceeding"), and the debtor and debtor-in-possession (the "Debtor"

or "Highland") in the above-captioned chapter 11 case ("Bankruptcy Case"), submits this

amended memorandum of law (the "Memorandum") in support of the *Debtor's Motion for a*

*Temporary Restraining Order and Preliminary Injunction against Mr. James Dondero* (the

"Motion"), pursuant to sections 105(a) and 362(a) of title 11 of the United States Code (the

"Bankruptcy Code"), and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), for a temporary restraining order ("TRO") and preliminary injunction

enjoining Mr. James Dondero ("Mr. Dondero" or "Defendant") from engaging in any Prohibited

Conduct.[2]  In support of its Motion, the Debtor states as follows:

## I.
## INTRODUCTION

1.      Highland's immediate need for injunctive relief stems from Mr. Dondero's

recent interference with the Debtor's operations, management of assets, and liquidation of its

business in this chapter 11 case, as well as written threats Mr. Dondero made to certain of the

Debtor's officers and employees.

2.      Mr. Dondero is the Debtor's former President and Chief Executive

Officer, having surrendered those positions in January 2020 as part of a "corporate governance"

settlement approved by the Court.  The settlement also resulted in, among other things, the

imposition of an independent board of directors at Strand Advisors, Inc., the Debtor's general

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the *Declaration of Mr. James P. Seery, Jr. in Support of the Debtor's Motion for a Temporary Restraining Order and Preliminary Injunction against Mr. James Dondero*, being filed contemporaneously herewith (the "Seery Dec.").

partner, with sole authority to oversee the Debtor's operations, management of its assets, and bankruptcy proceedings.

3.    While Mr. Dondero resigned as an officer, he continued to serve as a portfolio manager and employee of the Debtor until October 2020, when the Board asked for his resignation due to certain actions taken by Mr. Dondero, including objecting to the Acis Settlement and pursuing claims against the Debtor's estate alleging improper management. Regrettably, since his resignation, in the last couple of weeks, Mr. Dondero interfered with the Debtor's operations by intervening to halt certain trades that were authorized by the Debtor's CEO—while issuing warnings to certain of the Debtor's employees.  In addition, promptly after the Debtor exercised its right to demand payment from Mr. Dondero and certain of his affiliates on almost $30 million of Demand Notes, Mr. Dondero sent a threatening text message to Mr. James R. Seery, Jr. ("Mr. Seery"), the Debtor's CEO and CRO that said simply:  "Be careful what you do – last warning."

4.    Mr. Dondero cannot be permitted to directly (or indirectly through his corporate entities or anyone else acting on his behalf) control, interfere with, or even influence the Debtor's business and operations or threaten or intimidate the Debtor or any of its directors, officers, employees, professionals, or agents.

5.    The Debtor has therefore filed the Motion and commenced a separate adversary proceeding to temporarily, preliminarily, and permanently enjoin the Mr. Dondero from: (a) communicating (whether orally, in writing, or otherwise), directly or indirectly, with any Board member unless Mr. Dondero's counsel and counsel for the Debtor are included in any such communication; (b) making any express or implied threats of any nature against the Debtor or any of its directors, officers, employees, professionals, or agents; (c) communicating with any

2

of the Debtor's employees, except as it specifically relates to shared services currently provided to affiliates owned or controlled by Mr. Dondero; (d) interfering with or otherwise impeding, directly or indirectly, the Debtor's business, including but not limited to the Debtor's decisions concerning its operations, management, treatment of claims, disposition of assets owned or controlled by the Debtor, and pursuit of the Plan or any alternative to the Plan; and (e) otherwise violating section 362(a) of the Bankruptcy Code (collectively, the "Prohibited Conduct").

## II.
## FACTUAL BACKGROUND

**A.**    **An Independent Board is Appointed to Oversee the Debtor's Affairs; Mr. Dondero's Role Becomes Limited and Subject to the Board's Oversight; and Mr. Dondero is Later Asked to Resign**

6.       On December 27, 2019, the Debtor filed that certain Motion of the Debtor for Approval of Settlement with the Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course [Docket No. 281] (the "Settlement Motion").  On January 9, 2019, this Court entered an Order granting the Settlement Motion [Docket No. 339] (the "Settlement Order").  Seery Dec. ¶3.

7.       As part of the Settlement Order, this Court also approved a term sheet [Docket No. 354-1] (the "Term Sheet") between the Debtor and the Committee pursuant to which Mr. Seery, Mr. John S. Dubel, and Mr. Russell Nelms (collectively, the "Independent Directors"), were appointed to the board (the "Board") of Strand Advisors, Inc. ("Strand"), the Debtor's general partner.  Seery Dec. ¶4; Exhibit 1.

8.       As required by the Term Sheet, on January 9, 2020, Mr. Dondero resigned from his roles as an officer and director of Strand and as the Debtor's President and Chief Executive Officer.  Seery Dec. ¶5; Exhibit 2.

9.     While resigning from those roles, Mr. Dondero remained an unpaid employee of the Debtor and retained his title as portfolio manager for each of the investment vehicles and funds managed by the Debtor.  However, pursuant to the Term Sheet, Mr. Dondero's authority was subject to oversight and ultimately termination by the Independent Board:

> Mr. Dondero's responsibilities in such capacities shall in all cases be as determined by the Independent Directors . . . [and] will be subject at all times to the supervision, direction and authority of the Independent Directors.  In the event the Independent Directors determine for any reason that the Debtor shall no longer retain Mr. Dondero as an employee, Mr. Dondero agrees to resign immediately upon such determination.

Seery Dec. ¶6; Exhibit 1.

10.     Although ultimate decision making authority remained with the Board, by resolution passed on January 9, 2020, the Board authorized Mr. Seery to work with the Debtor's traders and Mr. Dondero with respect to certain of the Debtor's assets where Mr. Dondero remained portfolio manager.  Seery Dec. ¶7; Exhibit 3.

11.     During the pendency of the Debtor's Bankruptcy Case, it became apparent that it would be more efficient and lead to better financial results to have a traditional corporate management structure oversee the Debtor's operations and assets.  Consequently, after due deliberation, the Board determined that it was in the best interests of the Debtor's estate to appoint Mr. Seery as the Debtor's Chief Executive Officer ("CEO") and Chief Restructuring Officer ("CRO").  This Court approved Mr. Seery's appointment as CEO and CRO on July 16, 2020.  [Docket No. 854].  Seery Dec. ¶8.

12.     Mr. Seery's appointment as CEO and CRO formalized his role and authority to oversee the day-to-day management of the Debtor, including the purchase and sale of assets held by the Debtor and its managed investment vehicles, funds, and subsidiaries.  Mr.

4

Seery routinely carried out such responsibilities, particularly after the seizure by Jefferies, LLC of the Highland Select Equity Fund, L.P. ("Select") prime brokerage account managed by Mr. Dondero as a result of Select's failure to post margin. Seery Dec. ¶9.

13.     On August 12, 2020, the Debtor filed its Plan of Reorganization.  [Docket No. 944] (as subsequently amended, the "Plan").  The Plan provides for, among other things, the monetization of the Debtor's assets for the benefit of the Debtor's creditors.  Also in August 2020, the Debtor entered into a mediation with certain of its creditors which resulted in, among other things, a settlement with Josh and Jennifer Terry and Acis.  Seery Dec. ¶10.

14.     After the Acis settlement was publicly announced, Mr. Dondero voiced his displeasure with not just the terms of the Acis settlement, but that a settlement had been reached at all.  On October 5, 2020, Mr. Dondero objected to the Debtor's motion seeking approval of the Acis settlement  [Docket No. 1121], thereby creating an actual conflict with the Board and the Debtor.  Seery Dec. ¶11.

15.     In addition, the Dugaboy Investment Trust – Mr. Dondero's family trust – continued to press its proof of claim alleging that the Debtor, and by extension the Board and Mr. Seery, had mismanaged Highland Multi Strategy Credit Fund, L.P. ("MSCF") with respect to the sale of MSCF's assets in May of 2020. Seery Dec. ¶12.

16.     The Debtor concluded that it was untenable for Mr. Dondero to continue to be employed by the Debtor in any capacity while taking positions adverse to the interests of the Debtor's estate.  Thus, on October 2, 2020, Mr. Dondero was asked to resign as a portfolio manager at the Debtor and from any roles that he had at MSCF.  Seery Dec. ¶13; Exhibit 4.

17.     Mr. Dondero resigned from his positions with the Debtor on October 9, 2020.  Seery Dec. ¶14; Exhibit 5.

5

**B.** **Mr. Dondero Interferes with the Debtor's Business and Instructs and Threatens Certain of the Debtor's Employees**

18. Since tendering his resignation, Mr. Dondero has interfered with the Debtor's operations and the management of the assets under its control, and he has otherwise acted directly and through entities he controls to improperly exert pressure on certain of the Debtor's employees. Seery Dec. ¶15.

19. The Debtor serves as the servicer, portfolio manager, or equivalent of certain pooled collateralized loan obligation vehicles (collectively, the "CLOs"). The Debtor's sole client in these matters is the CLO issuer, and not any individual shareholder or noteholder of the CLO. Seery Dec. ¶16.

20. NexPoint Advisors, L.P. ("NexPoint") and Highland Capital Management Fund Advisors, L.P. ("HCMFA," and together with NexPoint, the "Advisors") are investment advisors directly or indirectly controlled by Mr. Dondero. Upon information and belief, the Advisors and certain investment funds advised by the Advisors and/or their affiliates own interests in the CLOs for which the Debtor serves as portfolio manager or servicer. Seery Dec. ¶17.

21. On October 16, 2020, the Advisors wrote to Mr. Seery and, among other things, questioned the Debtor's business judgment and "request[ed] that no CLO assets be sold without prior notice to and prior consent from the Advisors." Mr. Seery did not accede to the Advisors' "request" nor did he otherwise respond to their letter. Seery Dec. ¶18; Exhibit 6.

22. On November 24, 2020, the Advisors sent another letter where they again questioned the Debtor's business judgment and "re-urge[d] [their] request that no CLO assets be sold without prior notice to and prior consent from the Advisors." Seery Dec. ¶19; Exhibit 7.

23.     The Debtor has no contractual, legal, or other obligation to provide notice to, or obtain the consent of, the Advisors (or any other holder of interests in the CLOs) before exercising its business judgment to manage and service the CLOs, including in connection with the sale of the CLOs' assets.  Seery Dec. ¶20.

24.     On November 24, 2020, Mr. Dondero personally intervened to prevent sales of certain CLO assets that he knew Mr. Seery had authorized.  Upon learning that the trades that Mr. Seery had authorized were being executed, Mr. Dondero sent an e-mail to Mr. Matthew Pearson (with copies to Mr. Hunter Covitz and Mr. Joseph Sowin) in which he said "No…… do not."  About an hour later, Mr. Pearson cancelled the trades but Mr. Dondero warned Mr. Pearson that "HCMFA and DAF has [sic] instructed Highland in writing not to sell any CLO underlying assets . . . there is potential liability, don't do it again please."  Seery Dec. ¶21.

25.     Mr. Dondero's threat had the intended effect as Mr. Sowin (an HCMFA employee, not an employee of the Debtor) responded by saying that "Compliance should never have approved this order then – will coordinate with them Jim [Dondero].  Post:  Please block all orders from Hitting the trading desk for the fun[ds] Jim [Dondero] mentioned."  Seery Dec. ¶22.

26.     On November 27, 2020, after learning that Mr. Seery had attempted to effectuate the trades, Mr. Dondero continued to interfere with the Debtor's business and engage in threating conduct, this time writing to Thomas Surgent (the Debtor's Chief Compliance Officer) that "I understand Seery is working on a work around to trade these securities anyway.  Trades that contradict investor desires and have no business purpose or investment rational.  You might want to remind him (and yourself) that the chief compliance officer has personal liability."  Seery Dec. ¶23; Exhibit 8.

27.     On December 3, 2020, the Debtor demanded that the Advisors "cease and desist from making or initiating, directly or indirectly, any instructions, requests, or demands to HCMLP regarding the terms, timing, or other aspects of any portfolio transactions of any of the CLOs."  Seery Dec. ¶24; Exhibit 9.

28.     The Debtor made the same demand of Mr. Dondero the following day. Seery Dec. ¶25; Exhibit 10.

**C.     The Debtor Demands that Mr. Dondero and his Affiliates Satisfy Certain Demand Notes, and Mr. Dondero Issues an Explicit Threat**

29.     HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC), Highland Capital Management Funds Advisors, LP, and Highland Capital Management Services, Inc. (collectively, the "Corporate Obligors") are the makers under a series of promissory notes in favor of the Debtor (collectively, the "Corporate Obligors' Notes").  Seery Dec. ¶26.

30.     In addition, Mr. Dondero, in his personal capacity, is the maker under a series of promissory notes in favor of the Debtor (collectively, the "Dondero Notes" and together with the Corporate Obligors' Notes, the "Demand Notes").  Seery Dec. ¶27.

31.     Each of the Demand Notes provides, among other things, that (a) all accrued interest and principal "shall be due and payable upon demand," and that (b) the maker shall pay the holder (*i.e.*, the Debtor) all court costs and costs of collection, including reasonable attorneys' fees and expenses, if, among other things, the Note is "collected through a bankruptcy court."  Seery Dec. ¶28; Exhibits 11 through 23.

32.     On December 3, 2020, Debtor's counsel sent letters to representatives of Mr. Dondero and each of the Corporate Obligors demanding payment of all unpaid principal and accrued interest due under the Demand Notes by December 11, 2020 (collectively, the "Demand Letters").  These demands were made to collect funds that will be required to fund the

8

reorganized Debtor and the trust under the plan of reorganization that is subject to confirmation before this Court in January 2021. Seery Dec. ¶29; Exhibits 24 through 27.

33.     Shortly after the Debtor sent the Demand Letters, Mr. Dondero sent a text message to Mr. Seery that stated only: "Be careful what you do – last warning." Seery Dec. ¶30; Exhibit 28.

34.     On December 6, 2020, at Mr. Seery's instruction, the Debtor's counsel sent Mr. Dondero's counsel a letter demanding that Mr. Dondero "cease and desist from (a) communicating directly with any Board member without counsel for the Debtor, (b) making any further threats against HCMLP or any of its directors, officers, employees, professionals, or agents, or (c) communicating with any of HCMLP's employees, except as it specifically relates to shared services currently provided to affiliates owned or controlled by Mr. Dondero." The Debtor specifically put Mr. Dondero on notice that the Debtor intended to file this Motion. Seery Dec. ¶ 32; Exhibit 29.

### III.
### LEGAL STANDARD

35.     Pursuant to section 105(a) of the Bankruptcy Code, bankruptcy courts are authorized to "issue any order, process, of judgment that is necessary or appropriate to carry out the provisions of the Code. *In re FiberTower Network Servs. Corp.*, 482 B.R. 169, 182 (Bankr. N.D. Tex. 2012) (quoting 11 U.S.C. § 105); *see also In re OGA Charters, LLC*, 554 B.R. 415, 424 (Bankr. S.D. Tex. 2016) ("The Court may issue injunctions as part of its equitable powers, pursuant to 11 U.S.C. § 105."). In other words, courts have broad authority to take actions necessary to "protect the integrity of the bankruptcy estate" and to "enjoin actions that 'might impede the reorganization process.'" *FiberTower*, 482 B.R. at 182 (quoting *MacArthur Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 837 F.2d 89, 93 (2d Cir.1988)). "A

9

preliminary injunction seeks to 'prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits.'" *OGA Charters*, 554 B.R. at 424 (quoting *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir.1985)).

36.     Injunctive relief is warranted under section 105(a) where the movant shows: (1) a likelihood that it will prevail on the merits; (2) irreparable injury in the absence of injunctive relief; (3) that the balance of the equities favor the movant; and (4) that the injunction would serve the public interest. *See Green v. Wells Fargo Bank, N.A.*, 575 Fed.Appx. 322, 323 n. 3 (5th Cir. 2014) (stating the four prong test for a preliminary injunction as likelihood of success, irreparable harm, balance of the equities, and the public interest); *In re Commonwealth Oil Ref. Co., Inc.*, 805 F.2d 1175, 1189 (5th Cir. 1986) (same); *La Union Del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 608 F.3d 217, 219 (5th Cir. 2010) (same).

37.     A temporary restraining order should be granted pending a hearing for a preliminary injunction where it appears that "immediate and irreparable injury, loss or damage will result to the movant." *See* Fed. R. Bankr. P. 7065 (incorporating by reference Fed. R. Civ. P. 65); *see also In re Seatco, Inc.*, 259 B.R. 279, 285 (Bankr. N.D. Tex. 2001) (noting that Fed. R. Civ. P. 65 applies in adversary proceedings, "except that a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor-in-possession without compliance with Rule 65(c)").  The issuance of an injunction is within the broad discretion of the court. *See In re Compton Corp.*, 90 B.R. 798, 806 (Bankr.N.D.Tex. 1988) ("It is [] clear that the issuance of an injunction, as a general matter, is within the discretion of the court."); *Star Satellite, Inc. v. City of Biloxi*, 779 F.2d 1074, 1079 (5th Cir. 1986) (noting that the decision to issue or not to issue an injunction is subject to "considerable discretion" in the district court); *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 511 (2d Cir. 2005) ("The

10

district court has wide discretion in determining whether to grant a preliminary injunction, and this Court reviews the district court's determination only for abuse of discretion.").

38.     For the reasons that follow, the Debtor satisfies the standard for injunctive relief.

## IV.
## ARGUMENT

39.     Injunctive relief is necessary to prevent the imminent and irreparable harm that would be caused to the Debtor if Mr. Dondero is permitted to engage in any of the Prohibited Conduct.

40.     The Debtor is likely to succeed on the merits because Mr. Dondero's interference, warnings, and threats cannot be disputed (they are in writing), and the relief sought – the protection of its bankruptcy estate during its chapter 11 proceedings – is precisely the type of relief authorized under sections 105 and 362 of the Bankruptcy Code. *See OGA Charters*, 554 B.R. at 432-33 (granting injunctive relief to protect the debtor's assets during chapter 11 proceedings, and noting that a "preliminary injunction, is, in essence, merely an extension of § 362's stay" of the debtor's bankruptcy estate asset).

41.     The equities strongly (if not exclusively) favor the Debtor because the Debtor's ability to operate and execute its Plan for the benefit of its stakeholders will be jeopardized if Mr. Dondero is permitted to engage in the Prohibited Conduct – conduct which Mr. Dondero has no legal or equitable right to engage in.

42.     Finally, and for all these same reasons, granting injunctive relief serves the public interest because the Debtor's chances of a successful liquidation will be severely jeopardized if injunctive relief is not granted.

A.    **The Debtor will Suffer Irreparable Harm in the Absence of Injunctive Relief**

43.    The Debtor's estate will be severely injured if Mr. Dondero is not enjoined from interfering with and impeding the Debtor's business, management of its assets, and treatment of claims against the Debtor's estate.   Irreparable harm is "a harm 'for which there is no adequate remedy at law.'" *OGA Charters,* 554 B.R. at 424 (quoting *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013)); *see also Compass Bank v. Veytia*, EP-11-CV-228-PRM, 2011 WL 13234883, at *2 (W.D. Tex. Sept. 21, 2011) ("The general rule in the Fifth Circuit is that 'harm is irreparable where there is no adequate remedy at law, such as monetary damages.'") (quoting *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2010)).

44.    In the bankruptcy context, "irreparable harm" refers to either "irreparable harm to the interest of a creditor or irreparable harm to the bankruptcy estate." *In re Hunt*, 93 B.R. 484, 495 (Bankr. N.D. Tex. 1988) (internal quotations omitted).   The element of irreparable injury to the debtor's estates is described as "irreparable harm to the creditors and estates from disruption of th[e] Court's exclusive authority to effectively manage the[] cases." *Id*.   Moreover, "the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'" *Compass Bank*, 2011 WL 13234883, at *2 (citing *Janvey*, 647 F.3d at 600); (holding that "dissipation of assets ... would impair the court's ability to grant an effective remedy").

45.    Here, in the absence of injunctive relief, both the Debtor's estate and its creditors will face imminent and irreparable harm that cannot be adequately remedied.   If Mr. Dondero continues to engage in the Prohibited Conduct, the Debtor's ability to effectively wind down its business in the chapter 11 proceedings will be impaired.   The harm is thus the not

12

merely "speculative, theoretical, or remote," but imminent and irreparable. *FiberTower Network Services*, 482 B.R. at 187. If Mr. Dondero continues to engage in the Prohibited Conduct, this Court's ability to manage the Debtor's liquidation efforts will also be severely jeopardized. *See Hunt*, 93 B.R. at 496 (finding irreparable harm to debtor where "[h]arm would also result to creditors and the Debtor's estate will result from the other harm attendant to the present continuation of the CFTC Action, on a potentially defeasible theory, is the harm to the creditors and estate from disrupting this court's ability to effectively manage the Debtors' reorganization efforts.").

46. In sum, if Mr. Dondero is not immediately enjoined from engaging in his disruptive conduct, the Debtor's ability to manage its business and execute its Plan for the benefit of all of its stakeholders will be jeopardized.

**B.      The Debtor Demonstrates Likelihood of Success on the Merits**

47. The Debtor is likely to succeed on the merits. To satisfy the likelihood of success element, the movant need only present their "prima facie case." *Janvey*, 647 F.3d at 595 (internal quotations omitted). Moreover, the relevant "merits" question in this case is not whether Debtor is likely to prevail on appeal, but rather "whether this [C]ourt is authorized and likely to grant the requested relief." *FiberTower*, 482 B.R. at 183–84 (citing COLLIER ON BANKRUPTCY ¶ 105.03[1][a] (16th ed. 2012) ("In connection with the 'likelihood' argument, many courts have looked to the purpose of the requested injunction ... the likelihood of success argument will track closely the bankruptcy right sought to be vindicated."); *see also Hunt*, 93 B.R. at 493 ("[t]he inquiry [for success on the merits] for a preliminary injunction necessarily focuses on the outcome of a later proceeding, at which time the merits giving rise to the litigation will be decided" rather than success on the merits "so that reorganization efforts mandated by the

Bankruptcy Code will not be thwarted by the [enforcement] proceeding.") (internal quotations omitted).

48.     Here, as discussed above, the Court is authorized to grant the Debtor's requested relief. *See* 11 U.S.C § 105(a) (authorizing the bankruptcy court to "issue any order, process, of judgment that is necessary or appropriate to carry out the provisions of the Code."); *see also* 11 U.S.C. § 362. The Debtor seeks to enjoin Mr. Dondero from attempting to control, manage, or otherwise influence the Board's sale of the Debtor's CLO assets for the purpose of protecting the Board's ability to manage the Debtor's assets, and in turn, to protect the integrity of the Debtor's bankruptcy estate. *See FiberTower*, 482 B.R. at 182. The relief the Debtor seeks here is thus precisely the type contemplated by the Bankruptcy Court's broad powers to grant injunctive relief under Section 105. Moreover, there can be no credible dispute that Mr. Dondero engaged in the conduct complained of because it is reflected in contemporaneous, written communications.

**C.     The Equities Strongly Favor the Debtor**

49.     The balance of the equities also tip decisively in the Debtor's favor. In the absence of injunctive relief, the Debtor faces imminent and irreparable harm. If Mr. Dondero is not prevented from continuing to interfere with the Debtor's business and management of its assets and claims, the Debtor's ability to successfully liquidate and satisfy its claims will be put at risk. By contrast, there are no equities that favor denying injunctive relief as Mr. Dondero has no legal or equitable right to engage in any of the Prohibited Conduct, all of which is adverse to the Debtor's interests.

50.     In sum, the potential harm to the Debtor in the absence of injunctive relief far outweighs any harm to Mr. Dondero if injunctive relief issues. *See FiberTower*, 482 B.R. at 189 (finding that the balance of equities favored the debtors where "[t]he potential harm to

14

Debtors … far outweighs the possible harm to Defendant" if injunctive relief is granted "because, among other reasons, the Debtors "face the loss of cash collateral").

**D.** **Injunctive Relief Serves the Public Interest**

51.     Injunctive relief will further the public interest because it is necessary to protect the Debtor's ability to successfully liquidate its assets and satisfy its claims. "Courts have often held that injunctions that facilitate reorganizations serve the public interest." *FiberTower*, 482 B.R. at 189 (citing *SAS Overseas Consultants v. Benoit*, No. 99–1663, 2000 WL 140611, at *5 (E.D.La. Feb. 7, 2000); *Lazarus Burman Assocs. v. Nat'l Westminster Bank U.S.A. (In re Lazarus Burman Assocs.)*, 161 B.R. 891, 901 (Bankr.E.D.N.Y.1993)). In other words, "[i]n bankruptcy, the public policy is to have an orderly administration of the debtor's assets via their bankruptcy estate, such that the debtor may be able to gain a fresh start, by satisfying valid claims against that estate." *OGA Charters*, 554 B.R. at 426; *see also In re Hunt*, 93 B.R. at 497 ("Chapter 11 expresses the public interest of preserving the going-concern values of businesses, protecting jobs, ensuring the equal treatment of and payment of creditors, and if possible saving something for the equity holders.").

52.     To this end, "[t]he Bankruptcy Court is vested with management duties to further this interest and ensure a meaningful process for all of these competing entities." *In re Hunt*, 93 B.R. at 497 (citing *In re Timbers of Inwood Forest Assocs., LTD.*, 808 F.2d 363, 373 (5th Cir.1987) ("Early and ongoing judicial management of Chapter 11 cases is essential if the Chapter 11 process is to survive and the goals of reorganizability on the one hand, and creditor protection, on the other, are to be achieved."). Thus, in general, preventing the dissipation of potential assets belonging to the debtor that, pursuant to 11 U.S.C. § 541, may be brought into the bankruptcy estate is in the public interest. *See OGA Charters*, 554 B.R. at 426 (finding that the "public interest may be served where the purpose of the preliminary injunction is such that it

15

serves to" uphold a core "pillar of bankruptcy by preserving a debtor's … assets that can be potentially used to satisfy valid claims against the bankruptcy estate.").

53.     Here, if Mr. Dondero is not enjoined from engaging in the Prohibited Conduct, the Debtor's liquidation process will be jeopardized at the expense of its creditors. *See FiberTower*, 482 B.R. at 189; *In re Hunt*, 93 B.R. at 497 (holding that an injunction would serve the public interest where, the "Debtors' chances of successfully reorganizing will be jeopardized unless injunctive relief is granted," further noting that "if the Debtors were to liquidate, their employees and customers would be adversely affected.").  By contrast, the public interest would not be served by allowing Mr. Dondero to continue to interfere with the Debtor's reorganization process.  The Debtor's management must be able to execute its duties of managing and selling assets so that the Debtor can perform its obligations and satisfy valid claims against the estate.

## V.
## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court grant its Motion and enter an Order in the form annexed hereto as Exhibit A, and grant any further relief as the Court deems just and proper.

Dated: December 8, 2020.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
          ikharasch@pszjlaw.com
          jmorris@pszjlaw.com
          gdemo@pszjlaw.com
          hwinograd@pszjlaw.com

-and-

**HAYWARD & ASSOCIATES PLLC**

*/s/ Zachery Z. Annable*
_____
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

17