# EXHIBIT 29

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 19-12239 (CSS) |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
EXPEDITED REQUESTS FOR PRODUCTION OF DOCUMENTS TO HIGHLAND**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure as made applicable by Rules 9014, 7026, and 7034 of the Federal Rules of Bankruptcy Procedure, the Official Committee of Unsecured Creditors in the above captioned bankruptcy case (the "Committee") hereby serves the following expedited requests for production of documents to Highland Capital Management, L.P. ("Request(s)").

**DEFINITIONS**

1. "BBVA" means BBVA USA and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on their behalf of any of the foregoing, including without limitation Account No. 342, as referenced in the First Day Declaration.

2. "Communication(s)" means any written or oral communication of any kind or character, including, by way of example and without limitation, e-mails, instant messages, text messages, voicemail or voice messages, audio recordings, personal conversations, telephone conversations, letters, meetings, memoranda, telegraphic and telex communications or transmittals of Documents, whether such communication was sent, received, or created, in final

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

25572616.1

or in draft, and all Documents concerning or memorializing such written or oral communications.

3. "Concerning" means consisting of, reflecting, referring to, regarding, related to, involving, evidencing, constituting, or having any legal, logical, evidential, or factual connection with (whether to support or rebut) the subject matter designated in any of these Requests. A request for documents "concerning" a specified subject matter always shall include communications, notes, and memoranda (whenever prepared) relating to the subject matter of the request.

4. "Debtor," "You," and "Your" means Highland Capital Management, L.P.

5. "Debtor's Application for Retention of Foley" means the *Debtor's Application for an Order Authorizing the Retention and Employment of Foley Gardere, Foley & Lardner LLP as Special Texas Counsel, Nunc Pro Tunc to the Petition Date* filed with the Bankruptcy Court on October 29, 2019 [Docket No. 69].

6. "Debtor's Application for Retention of Lynn Pinker" means the *Debtor's Application for an Order Authorizing the Retention and Employment of Lynn Pinker Cox & Hurst LLP as Special Texas Litigation Counsel, Nunc Pro Tunc to the Petition Date* filed with the Bankruptcy Court on October 29, 2019 [Docket No. 70].

7. "Debtor's Ordinary Course of Business Motion" means *Precautionary Motion of the Debtor for Order Approving Protocols for the Debtor to Implement Certain Transactions in the Ordinary Course of Business* filed with the Bankruptcy Court on October 29, 2019 [Docket No. 77].

8. "Document(s)" means, without limitation, the original and all copies, prior drafts, and translation of information in any written, typed, printed, recorded or graphic form, however

produced or reproduced, of any type or description, regardless of origin or location, including without limitation all Electronically Stored Information, Communications, records, tables, charts, analyses, graphs, schedules, reports, memoranda, notes, lists, calendar and diary entries, letters (sent or received), contracts, statements, bills, checks, vouchers, video tapes, photographs, tape recordings, other mechanical records, transcripts or logs of any such recordings, and all other data compilations from which information can be obtained. The term "Document(s)" is intended to be at least as broad in meaning and scope as the usage of the term in or pursuant to the Federal Rules of Civil Procedure.

9. "Dondero" means James D. Dondero.

10. "First Day Declaration" means the *Declaration of Frank Waterhouse in Support of First Day Motions* filed with the Bankruptcy Court on the Petition Date [Docket No. 9].

11. "Frontier Bank" means Frontier State Bank and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on their behalf of any of the foregoing.

12. "HCM Korea" means Highland Capital Management Korea Limited any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on their behalf of any of the foregoing.

13. "HCM Latin America" means Highland Capital Management Latin America, L.P. any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, employees, representatives, agents, advisors,

attorneys, and all other persons and entities acting or purporting to act on their behalf of any of the foregoing.

14. "HCM Singapore" means Highland Capital Management (Singapore) Pte Ltd. any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on their behalf of any of the foregoing.

15. "Highland Entity" and "Highland Entities" means the Debtor and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, employees, representatives, agents, advisors, attorneys, owners, partners, principals, shareholders, and all other persons and entities acting or purporting to act on their behalf of any of the foregoing, including without limitation the entities referenced in the First Day Declaration, paragraphs five and six.

16. "Highland Multi Strategy Credit Fund, L.P." means Highland Multi Strategy Credit Fund, L.P. and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on their behalf of any of the foregoing.

17. "Highland Select Equity Fund, L.P." means Highland Select Equity Fund, L.P. and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on their behalf of any of the foregoing, including Highland Select Equity Fund GP, L.P.

18. "Hunter Mountain Trust" means Hunter Mountain Trust and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, trustees, directors, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on their behalf of any of the foregoing, including Crown Global Investments.

19. "Identify" means to state, to the extent known (or, if not known, to so state,) the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s).

20. "Intercompany Transactions" means any transaction between the Debtor and other Highland Entities, including without limitation transactions between the Debtor and any or all of Highland Multi Strategy Credit Fund, L.P., HCM Korea, HCM Latin America, and HCM Singapore, as referenced in the First Day Declaration, paragraph 59(a) through 59(d), as well as transactions between Highland Entities and each or all of Highland Entities' owners, partners, shareholders, and/or principals, including transactions between Highland Entities and Dondero and Okada.

21. "Jefferies" means Jefferies, LLC and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on their behalf of any of the foregoing.

22. "NexBank" means NexBank, SSB and any direct or indirect predecessors or successors in interest, parents, subsidiaries or affiliates of any of them, and any and all officers, directors, employees, representatives, agents, advisors, attorneys, and all other persons and entities acting or purporting to act on their behalf of any of the foregoing, including without

limitation NexBank Account No. 130, Account No. 513, Account No. 891, Account No. 735, and Account No. 668, as referenced in the First Day Declaration.

23. "Okada" means Mark Okada.

24. "Petition Date" means October 16, 2019.

25. "Prime Account" means the prime brokerage account the Debtor maintains with Jefferies, as referenced in the First Day Declaration, paragraph 11.

26. "Relating to" means consisting of, reflecting, referring to, regarding, concerning, involving, evidencing, constituting, or having any legal, logical, evidential, or factual contention with (whether to support or to rebut) the subject matter designated in any of these Requests. A request for documents "relating to" a specified subject matter always shall include communications, notes and memoranda (whenever prepared) relating to the subject matter of the request.

## INSTRUCTIONS

1. The Committee requests production of the following documents and information on an immediate, expeditious, and rolling basis, with all documents to be received by November 12, 2019.

2. Unless otherwise indicated, all documents shall be produced for the relevant time period, which shall be the last five years prior to the Petition Date, including any documents having an earlier origin, if in use during the relevant time period.

3. The obligation to produce documents responsive to these Requests shall be continuing in nature, and a producing party is required promptly to product any documents requested herein that it locates or obtains after responding to these Requests, up to the conclusion of the Chapter 11 Case.

4. You are requested to produce not only those documents in Your physical possession, but also those documents within Your custody and control, including, without limitation, documents in the possession of Your agents, employees, affiliates, advisors, or consultants and any other person or entity acting on Your behalf.

5. If You have no documents responsive to a particular Request, or if for some other reason You are unable to produce responsive documents, Your response to that Request should specifically so state. Accordingly, You should respond to each and every Request herein. If You have certain documents that are responsive to a Request, but believe that additional documents not now available to You would also be responsive, You should provide the documents You now have and specifically state when the remainder of the documents will be provided.

6. Where an objection is made to any document request, the objection shall state with specificity all grounds for objection.

7. Where a claim of privilege is asserted in objecting to the production of any document and a document called for by these Requests is withheld on the basis of such assertion, the objecting party shall identify the nature of the privilege (including work product) that is being claimed and, if the privilege is governed by state law, indicate the state's privilege being invoked. In addition, the objecting party shall provide the following information with respect to any document so withheld: (i) the type of document, _e.g._ letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; (iv) such other information as is sufficient to identify the document for a subpoena _duces_ _tecum_, including, where appropriate, the author of the document, the addresses of the document, and any other recipients shown in the

document, and, where not apparent, the relationship of the author, addresses, and recipients to each other.

8. In the event that a requested document has been lost, destroyed, discarded and/or otherwise disposed of; the parties will identify the document by identifying: (i) its author or preparer; (ii) all persons to whom distributed or shown; (iii) date; (iv) subject matter; (v) attachments or appendices; (vi) date, manner, and reason for destruction or other disposition; (vii) person authorizing destruction or other disposition; (viii) the document request or requests to which the document is responsive.

9. Produce all responsive documents as they are kept in the usual course of business, or organize and label them to correspond with the request to which they are responsive.

10. With respect to Electronically Stored Information, the producing party shall confer with the Committee to develop parameters, including custodians and search terms, to identify responsive documents. This shall be done in accordance with Rule 7026-3 in the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

## DOCUMENTS REQUESTED

1. Provide the Debtor's and any Highland Entity's current "Legal Entities List" and the "Legal Entities List" from the five years prior, including any and all Documents or Communications relating to these "Legal Entities Lists."

2. Any and all Documents or Communications relating to any organizational charts of the Debtor and Highland Entities, including without limitation Highland Entities owned or managed in whole or in part by affiliate entities, Dondero, or Okada.

3. Any and all Documents or Communications relating to ownership of each Highland Entity, including who is responsible for managing each entity.

4. Any and all Documents or Communications relating to the Debtor's financial statements and financial statements for each Highland Entity, including without limitation detailed calculations of all management fees for the past five years.

5. Any and all Documents or Communications relating to Debtor's monthly closing packages or operating reports.

6. Any and all Documents or Communications relating to Intercompany Transactions, including without limitation any and all Documents and Communications relating to Highland Multi Strategy Credit Fund, L.P., HCM Korea, HCM Latin America, and HCM Singapore, as referenced in the First Day Declaration, paragraphs 59 through 66 and Debtor's Ordinary Course of Business Motion, paragraphs 39 through 42.

7. Any and all Documents or Communications evidencing or relating to any fees received and expenses incurred by Debtor for shared services, including without limitation any and all shared services agreements and calculations of shared services allocation.

8. Any and all Documents or Communications relating to Hunter Mountain Trust, including without limitation Documents and Communications relating any notes owed to Hunter Mountain Trust by the Debtor, any agreements between or among Hunter Mountain, the Hunter Mountain Trustee, Dondero, and Okada, and Hunter Mountain's ownership structure.

9. Any and all Documents or Communications relating to bank accounts that the Debtor, Dondero, or Okada have a direct or indirect interest in, including without limitation Documents or Communications relating to the Highland Select Equity Fund, L.P. bank or brokerage accounts, NexBank bank accounts, and BBVA bank accounts.

10. Any and all Documents or Communications relating to Frontier Bank, including without limitation all Documents and Communications relating to any loan agreements or amended loan agreements, as referenced in the First Day Declaration, paragraphs 13 through 15.

11. Any and all Documents or Communications relating to the ordinary course operations of Highland Select Equity Fund, L.P. and Highland Select Equity Fund GP, L.P. by the Debtor.

12. Any and all disbursements and transactions effectuated by the Debtor since the Chapter 11 Petition Date.

13. Any and all Documents or Communications relating to the Debtor's critical vendor list, including without limitation the identity of the Debtor's critical vendors, whether such critical vendors are affiliated with Debtor or any Highland Entity, and all Documents and Communications related to determining the designation of such vendor as a critical vendor.

14. Any and All Documents or Communications relating to Debtor's periodic payment summary statements, including without limitation the amount of compensation paid to Debtor's clients, entities, or affiliates and the amount reimbursed by such clients, entities, or affiliates.

15. Any and all Documents or Communications relating to payment of Debtor's employee Workforce Compensation, Benefit Programs, and bonus plans, as defined and referenced in the First Day Declaration, paragraphs 67 through 99.

16. Any and all Documents or Communications identifying Debtor's involvement in any current or prior litigation, including without limitation any Documents and Communications relating to any proposed or retained representation.

17. Any and all Documents or Communications relating to representation for which you seek the retention and employment of Lynn Pinker Cox & Hurst LLP as Special Texas Litigation Counsel, as referenced in Debtor's Application for Retention of Lynn Pinker, including without limitation any prior and proposed engagement letters and bills.

18. Any and all Documents or Communications relating to representation for which you seek the retention and employment of Foley Gardere, Foley & Lardner LLP as Special Texas Litigation Counsel, as referenced in Debtor's Application for Retention of Foley, including without limitation any prior and proposed engagement letters and bills.

19. Any and all Documents or Communications relating to any redemption notices proposed and issued to the Debtor, including without limitation the name of the entity proposing and issuing the notices, in the one year prior to the Petition Date.

20. Any and all Documents or Communications evidencing or relating to any transactions or proposed transactions where the Debtor, any Highland Entities, Dondero, or Okada have offered to buyout investors of any Highland Entity or affiliates.

21. Any and all Documents or Communications evidencing or relating to securities, interests, holdings, debt, positions, or contracts, sold, transferred, novated, assigned, or purchased by Debtor in the one year prior to the Petition Date.

22. Any and all Documents or Communications relating to transfers made by or to Debtor to or from any Highland Entity or any Highland Entity affiliates, including without limitation the transfer of any assets, contracts, responsibilities, rights, or obligations.

23. Any and all Documents or Communications relating to any obligation of Debtor or any indebtedness of Debtor to any Highland Entity or any Highland Entity affiliates in the five

years prior to the Petition Date, including without limitation intercompany reimbursement agreements.

24. Any and all Documents or Communications relating to any debt owed to Debtor by any of its principals or affiliates.

25. Any and all Documents or Communications relating to any guarantee of debt owed to Debtor by any of its principals or affiliates and of any principals or affiliates guaranteed by Debtor.

26. Any and all Documents or Communications evidencing or relating to fees received and expenses incurred by Debtor from money management and advisory services in the five years prior to the Petition Date, as referenced in the First Day Declaration, paragraph 8.

27. Any and all Documents or Communications evidencing or relating to funds received by Debtor through the sale of non-debtor subsidiaries.

28. Any and all Documents or Communications relating to account statements from Jefferies, including without limitation the Prime Account.

29. Debtor's governing documents and the governing documents of any Highland Entity and Highland Entity affiliates in existence in the last five years.

| | |
|---|---|
| Date: November 10, 2019<br>Wilmington, Delaware | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>*/s/ Kevin A. Guerke*<br>Sean M. Beach, Esq. (No. 4070)<br>Kevin A. Guerke, Esq. (No. 4096)<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Telephone: (302) 571-6600<br><br>-and-<br><br>Bojan Guzina, Esq.<br>Matthew Clemente, Esq.<br>Alyssa Russell, Esq.<br>SIDLEY AUSTIN LLP<br>One South Dearborn Street<br>Chicago, IL 60603<br>Telephone: (312) 853-7000<br><br>- and –<br><br>Jessica Boelter, Esq.<br>SIDLEY AUSTIN LLP<br>787 Seventh Avenue<br>New York, NY 10019<br>Telephone: (212) 839-5300<br><br>*Proposed Counsel for the Official Committee of Unsecured Creditors* |