PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 266326) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Debtor. | ) | **Re: Docket No. 1439** |
| | ) | |

**DEBTOR'S RESPONSE TO MR. JAMES DONDERO'S MOTION FOR ENTRY OF
AN ORDER REQUIRING NOTICE AND HEARING FOR FUTURE ESTATE
TRANSACTIONS OCCURRING OUTSIDE THE ORDINARY
COURSE OF BUSINESS**

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

DOCS_NY:41706.10 36027/002

Dondero Ex. 9

The above-captioned debtor and debtor in possession (the "Debtor") hereby submits this response (the "Response") to *James Dondero's Motion for Entry of an Order Requiring Notice and Hearing for Future Estate Transactions Occurring Outside the Ordinary Course of Business* [Docket No. 1439] (the "Motion").[2] In support of the Response, the Debtor respectfully states as follows:

## PRELIMINARY STATEMENT

1. Through the Motion, Mr. James Dondero seeks entry of an order requiring the Debtor to obtain court approval before engaging in transactions outside the ordinary course of its business. Essentially, the Motion argues that the Protocols, which were approved by the Court approximately eleven months ago with Mr. Dondero's consent, permit the Debtor to engage in transactions that violate 11 U.S.C. § 363. The Motion reflects a profound misunderstanding of the Protocols and the types of transactions the Bankruptcy Code requires be brought to the Court for approval.

2. Given the Debtor's business as an investment manager, the Debtor proactively sought Court approval at the beginning of the case to define which of the Debtor's day-to-day activities were ordinary course and could be completed without Court oversight. After weeks of negotiations, the Debtor and the Committee agreed on the Protocols, which govern those ordinary course transactions. The Protocols provided the Committee with enhanced notice rights with respect to what would otherwise be ordinary course transactions and which would not require Court approval. The Debtor never intended the Protocols to apply to out of the ordinary course transactions for which separate approval would be required under section 363(b). In fact, the Debtor emphasized this point to the Court at the January 9, 2020, hearing at which the Court

---

[2] All capitalized terms used but not defined herein have the meanings given to them in the Motion.

2

approved the Protocols.

3. Regardless, the Motion's real argument is that certain transactions superficially identified in the Motion were outside of the ordinary course of business and required Court approval. The Motion, however, conflates the Debtor's obligation to seek Court approval for out of the ordinary course transactions involving the sale of the *Debtor's assets* with restrictions on the Debtor's ability to exercise its role as an investment manager and to sell assets of the Debtor's managed investment vehicles. There is no restriction on the Debtor fulfilling its role as an investment manager in the Bankruptcy Code.

4. On December 10, 2020, the Court entered the *Order Granting Debtor's Motion for a Temporary Restraining Order against James Dondero*, Adv. Proc. No. 20-03190-sgj [Adv. Docket No. 10] (the "TRO"). The TRO was necessitated by Mr. Dondero's unlawful interference in the Debtor's business operations and threats made by Mr. Dondero to Mr. Seery and the Debtor's employees. Faced with the impending confirmation of the Debtor's Plan and the rejection of Mr. Dondero's alternative plan, Mr. Dondero is again attempting to impede the Debtor's operations and the Debtor's efforts to maximize value. The Court should see through Mr. Dondero's pre-textual arguments for transparency and deny the Motion.[3]

**REPLY**

**I.    The Protocols Do Not Authorize Sales Outside of the Ordinary Course**

5. In the Motion, Mr. Dondero contends that the Protocols allow the Debtor to sell assets outside of the ordinary course of business without having to satisfy the requirements of the Bankruptcy Code. That contention is false. The Protocols were instituted as part of a global

---

[3] Mr. Dondero's Motion also seeks relief similar to that sought by Mr. Dondero's two other registered investment advisors (NexPoint Advisors, L.P., and Highland Capital Management Fund Advisors, L.P. (collectively, the "Advisors")) in the *Motion for Order Imposing Temporary Restrictions on Debtor's Ability, as Portfolio Manager, to Initiate Sales by Non-Debtor CLO Vehicles* [Docket No. 1522] (the "CLO Motion"). In the CLO Motion, the Advisors seek a stay on the Debtor's ability to cause its managed CLOs to sell assets without the Advisors' consent.

3

settlement with the Committee and were intended to limit the Debtor's ability to transfer assets away from the estate and the reach of the Debtor's creditors. The Protocols were adopted because of the myriad and substantial allegations that the Debtor – then under the control of Mr. Dondero – had engaged in repeated fraudulent and impermissible transfers intended to frustrate creditor recoveries and hide assets. In negotiating the Protocols, the Debtor and the Committee intended the Protocols to apply <u>only</u> to (i) transactions within the "ordinary course of business" (*i.e.*, transactions that the Debtor could have completed without the need to come to this Court) or (ii) transactions occurring at non-Debtor entities that were otherwise arguably outside of this Court's jurisdiction and oversight. The Debtor was clear about this at the hearing approving the Protocols.[4]

6. The Protocols do not apply to transactions "outside of the ordinary course of business" because those transactions would *always* be subject to this Court's jurisdiction and require notice and a hearing. In other words, the Debtor and the Committee did not need to negotiate safeguards with respect to transactions outside the ordinary course. Those safeguards were already imposed by the Bankruptcy Code and have been honored by the Debtor (and the Committee) throughout this case. Further, the Protocols were approved by Mr. Dondero and have not been challenged by any party until now.

7. Again, the Protocols do not allow transactions outside the ordinary course of

---

[4] *See* Transcript, January 9, 2020 (14:16-25; 15: 1-10):

> The third major aspect of the term sheet, Your Honor, was the agreement on operating protocols, and it really relates to the ground rules for the Debtor's operations going forward and when notice to the Committee is required of certain transactions that would otherwise be in the ordinary course of business.
>
> Importantly, Your Honor, we are not trying to modify the Bankruptcy Code in any way. Any transactions out of the ordinary course of business would still be subject to Your Honor's approval.
>
> However, in this case. . . whether or not something is ordinary is not straightforward in a case such as the Debtor's, given the nature of the Debtor's operations. So we thought it was important to establish ground rules up front, and establishing those ground rules was one of the things we did initially in the case. We had opposition from the Committee, and we've worked through the opposition and ultimately arrived at the operating protocols that are attached to the term sheet.

4

business in violation of 11 U.S.C. § 363(b), and, for the avoidance of doubt, the Debtor will seek this Court's approval prior to conducting any transaction that would be outside the ordinary course of the Debtor's business.

## II. The Debtor Has *Not* Conducted Sales Outside of the Ordinary Course of Business

8. Mr. Dondero also argues, without factual support or specificity, that the Debtor has conducted a number of substantial asset sales outside of the ordinary course of business and that the Debtor's non-debtor subsidiaries have also conducted significant asset sales without complying with the Bankruptcy Code. Both of these arguments fail.

**The Asset Sales Mentioned in the Motion Did Not Involve Property of the Estate**

9. Mr. Dondero alleges that three sales violated 11 U.S.C. § 363: sales conducted by the Highland Multi Strategy Credit Fund, L.P. ("MSCF"), Highland Restoration Capital Partners, L.P. ("RCP"), and the sale of SSPI Holdings, Inc. ("SSPI").[5] These sales were subject to the Protocols (and consistent with the Protocols, each sale was approved by the Committee); however, they were not subject to 11 U.S.C. § 363(b).

10. Section 363(b) applies to "property of the estate." 11 U.S.C. § 363(b)(1) ("The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, ***property of the estate***. . . .") (emphasis added). In the Motion, Mr. Dondero asserts – without support – that sales of assets owned by subsidiaries of the Debtor must comply with 11 U.S.C. § 363. However, the assets of a debtor's non-debtor subsidiaries are *not* property of a debtor's estate. *See, e.g., In re Guyana Dev. Corp.*, 168 B.R. 892, 905 (Bankr. S.D. Tex. 1994) ("As a general rule, property of the estate includes the debtor's stock in a subsidiary but not the assets of the subsidiary."); *see also Parkview-Gem, Inc.*, 516 F.2d 807, 809 (8th Cir. 1975)

---

[5] In the Motion, Mr. Dondero refers to SSP Holdings generically as a subsidiary of "Trussway." (Motion ¶13). The actual entity that was sold was SSPI.

("Ownership of all of the outstanding stock of a corporation, however, is not the equivalent of ownership of the subsidiary's property or assets. . . Even though the value of the subsidiary's outstanding shares owned by the debtor may be directly affected by the subsidiary's disputes with third parties,' Congress did not give the bankruptcy court exclusive jurisdiction over all controversies that in some way affect the debtor's estate.'") (*citing In re Beck Indus., Inc.*, 479 F.2d 410 (2d Cir. 1973)).

11. Further, while the Debtor has certain control rights over RCP, MSCF, and SSPI, those rights do not make the assets of RCP, MSCF, and SSPI property of the Debtor's estate. *See In re Thomas*, 2020 Bankr. LEXIS 1364 at *31 (Bankr. W.D. Tenn. 2020) (a debtor's membership interest in an LLC, including both its economic rights and governance rights, became property of the estate on the petition date, but the assets of the LLC remain separate and the debtor must manage them consistent with the terms of the operating agreement and applicable law); *In re Cardinal Indus.*, 105 B.R. 834, 849 (Bankr. S.D. Ohio 1989) (a debtor's ownership interests and control rights in non-debtor partnerships were property of the estate; but those rights did not make the assets of the partnership property of the estate or implicate the automatic stay so as to prevent secured creditors of the non-debtor partnerships from foreclosing on properties of the partnerships).

12. None of RCP, MSCF, or SSPI is a wholly-owned subsidiary of the Debtor and each has meaningful third party investors. The assets of those entities – and by extension the interests of the third party investors – are not property of the estate and, therefore, are not subject to 11 U.S.C. § 363(b). The assets of these entities are only subject to this Court's oversight because of the agreement the Debtor reached with the Committee to enter into and be bound by the Protocols.

6

**The Debtor Is Authorized to Sell Assets Pursuant to 11 U.S.C. § 363(c)(1)**

13. Further, in the Motion, Mr. Dondero focuses on 11 U.S.C. § 363(b), but ignores 11 U.S.C. § 363(c)(1), which grants the Debtor the authority to operate its business in the ordinary course without notice or hearing. Specifically, section 363(c)(1) provides:

> [i]f the business of the debtor is authorized to be operated under section. . . 1108. . . of this title... the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1). As such, a debtor may enter into post-petition transactions, including the sale or lease of its property, if the debtor is authorized to operate its business under section 1108 and such transactions are "in the ordinary course of business."

14. An activity is "ordinary course" if it satisfies both the "horizontal test" and the "vertical test." S*ee, e.g., Denton Cty. Elec. Coop. v. Eldorado Ranch, Ltd. (In re Denton Cty. Elec. Coop.)*, 281 B.R. 876, 882 n.12 (Bankr. N.D. Tex. 2002); *see also In re Roth American, Inc.*, 975 F.2d 949, 952 (3d Cir. 1992). The vertical test looks to "whether the transaction subjects a hypothetical creditor to a different economic risk than existed when the creditor originally extended credit." *In re Patriot Place, Ltd.*, 486 B.R. 773, 793 (Bankr. W.D. Tex. 2013). The horizontal test considers "whether the transaction was of the sort commonly undertaken by companies in the industry." *Id.* As such, even if the MSCF, RCP, and SSPI asset sales mentioned in the Motion were subject to this Court's jurisdiction (and they were not), they are allowed by the Bankruptcy Code because they are within the ordinary course of the Debtor's business.

15. First, the vertical test is satisfied with respect to such sales. As Mr. Dondero knows, the Debtor is an investment manager and its business *is* buying and selling assets on behalf of its managed investment vehicles. As such, any creditor of the Debtor (with the

7

potential exception of Mr. Dondero) would expect the Debtor to continue buying and selling assets; that is what the Debtor does. The MSCF, RCP, and SSPI sales are thus consistent with the expectations of the Debtor's creditors and the Debtor's obligations to MSCF, RCP, and SSPI.[6] *See Thomas*, 2020 Bankr. LEXIS 1364 at *31. The MSCF, RCP, and SSPI sales are examples of the Debtor selling assets on behalf of a managed investment vehicles and include no different economic risk than existed prepetition. Because the Debtor is engaging in the same conduct post-petition as it did prepetition (which is what debtors-in-possession are intended and expected to do under 11 U.S.C. § 1107 of the Bankruptcy Code), the Debtor's creditors will incur no additional risk. This risk is further mitigated because any such sales will be authorized by the Debtor's new management, not Mr. Dondero.

16. Second, the horizontal test is satisfied. The Debtor, again, is an investment manager. Investment managers manage investment vehicles and by definition, buy and sell assets and distribute the proceeds of those assets to investors. The sales referenced in the Motion are consistent with that business as they are the sales of assets held by managed investment vehicles – some of which are currently in orderly liquidation. Selling assets *is* the Debtor's industry, and the sales referenced in the Motion are the sorts of sales commonly conducted in the industry. The Debtor is thus simply operating post-petition in the same manner it did prepetition, albeit under Court-mandated new management. Consequently, the horizontal test is also satisfied.

17. Regardless, if the Court believes the Debtor should be required to justify its conduct, the Debtor is ready to do so as it has acted, in all instances, in a commercially reasonable manner and in the best interests of the Debtor's estate and the stakeholders of MSCF,

---

[6] In fact, creditors should support the asset sales and such sales were supported by the Committee. The sales liquidated assets at non-Debtor entities to which the Debtor's creditors had no recourse and the net proceeds of those sales were distributed, in part, to the Debtor, to which the Debtor's creditors have recourse.

8

Case 19-34054-sgj11 Doc 1546 Filed 04/26/21 Entered 04/26/21 18:32:02 Page 9 of 11

RCP, and SSPI.[7]

### III. Mr. Dondero Has a *De Minimis* Interest in the Debtor

18. In the Motion, Mr. Dondero asserts he is a "creditor, indirect equity security holder, and party in interest" in the Debtor's bankruptcy. While that claim is ostensibly true, it is tenuous. Mr. Dondero filed five proofs of claim in the Debtor's bankruptcy case. Two of those proofs of claim were withdrawn with prejudice on November 23, 2020 [Docket No. 1460]. The other three are unliquidated, contingent claims, each of which said that Mr. Dondero would "update his claim in the next ninety days." Ninety days has passed since those proofs of claim were filed and yet Mr. Dondero has not updated those claims to assert an actual claim against the Debtor's estate.[8]

19. Mr. Dondero's claim as an "indirect equity security holder" is also a stretch. Mr. Dondero holds no direct equity interest in the Debtor. Mr. Dondero instead owns 100% of Strand Advisors, Inc. ("Strand"), the Debtor's general partner. Strand, however, holds only 0.25% of the total limited partnership interests in the Debtor through its ownership of Class A limited partnership interests. The Class A limited partnership interests are junior in priority of distribution to the Debtor's Class B and Class C limited partnership interests. The Class A interests are also junior to all other claims filed against the Debtor. Finally, Mr. Dondero's recovery on his indirect equity interest is junior to any claims against Strand itself. Consequently, before Mr. Dondero can recover on his "indirect" equity interest, the Debtor's

---

[7] The Dugaboy Investment Trust ("Dugaboy") – Mr. Dondero's family trust and a limited partner in MSCF – filed a proof of claim [Claim No. 177] asserting that the Debtor mismanaged MSCF during the pendency of the bankruptcy by causing MSCF to sell certain of its assets [Docket No. 1154] (the "Dugaboy Claim"). The Debtor believes that the sales discussed in the Dugaboy Claim are the same MSCF sales alluded to in the Motion. The Debtor is currently negotiating a briefing and discovery schedule with respect to the Dugaboy Claim with Mr. Dondero's counsel – which also represents Dugaboy. Consequently, even if the Motion is denied, the Debtor will still be required to account for its conduct with respect to the MSCF sales.

[8] Without knowing the what nature of the "updates" would have been, the Debtor does not concede that any "updates" would have been procedurally proper and reserves the right to object to any proposed amendment to Mr. Dondero's claims.

9

DOCS_NY:41706.10 36027/002

estate must be solvent, priority distributions to Class B and Class C creditors must be satisfied, and all claims against Strand must be paid.

20. Consequently, although in a purely technical sense Mr. Dondero may have standing as a "creditor" to object to asset sales, his standing is attenuated and his chances of recovery in this case are speculative. *See In re Kutner*, 3 B.R. 422, 425 (Bankr. N.D. Tex. 1980) (finding that a party had standing only when it had "pecuniary interest. . . directly affected by the bankruptcy proceeding"); *see also In re Flintkote Co*. 486 B.R. 99, 114-15 (Bankr. D. Del. 2012), *aff'd.* 526 B.R. 515 (D. Del. 2014) (a claim that is speculative cannot confer party in interest standing).

21. Mr. Dondero's minimal interest in the estate should not allow him to control the disposition of assets in the ordinary course of the Debtor's business, especially when those asset sales have the blessing of the Debtor's *actual* creditors and constituents. As the court said in *In re Lionel* (a case cited by Mr. Dondero), "a bankruptcy judge must not blindly follow the hue and cry of the most vocal special interest groups; rather, [the judge] should consider all salient factors. . . and . . . act to further the diverse interests of the debtor, creditors and equity holders, alike." 722 F.2d 1063, 1071 (2d Cir. 1983). Mr. Dondero's attempt to re-assert his lost control over the Debtor should be rejected and the Motion should be denied.

*[Remainder of Page Intentionally Blank]*

WHEREFORE, for the reasons set forth above, the Debtor respectfully requests that the Court deny the Motion.

Dated: December 11, 2020.   **PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717) (*pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*pro hac vice*)
John A. Morris (NY Bar No. 266326) (*pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:   jpomerantz@pszjlaw.com
          ikharasch@pszjlaw.com
          jmorris@pszjlaw.com
          gdemo@pszjlaw.com

-and-

**HAYWARD & ASSOCIATES PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

11