**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § § § | Case No. 19-34054-sgj11 |
| Debtor. | § § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § | |
| Plaintiff, | § § | Adversary Proceeding |
| vs. | § § § | No. 20-3190-sgj11 |
| JAMES D. DONDERO, | § § § | |
| Defendant. | § § | |

**JOINT PRETRIAL ORDER**

This *Joint Pretrial Order* was jointly submitted to the Court for entry pursuant to Local Bankruptcy Rule 7016.1, and the Court's *Order Regarding Adversary Proceedings Trial Setting*

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

*and Alternative Scheduling Order* [Docket No. 18][2] by plaintiff Highland Capital Management, L.P. ("Plaintiff" or the "Debtor"), and defendant James Dondero ("Defendant" or "Mr. Dondero," and together with the Debtor, the "Parties").

The Court has considered this proposed order and finds and concludes that it should be entered in the Adversary Proceeding. It is therefore **ORDERED** that this *Joint Pretrial Order* shall control the trial of this Adversary Proceeding as follows:

### I. NATURE OF ACTION AND PROCEDURAL POSTURE

1. This action involves a claim for permanent injunctive relief under sections 105(a) and 362(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The operative complaint in this action is *Plaintiff Highland Capital Management, L.P.'s Verified Original Complaint for Injunctive Relief* [Adv. Proc. Docket No. 1] (the "Complaint"), filed on December 7, 2020.

2. On December 7, 2020, the Debtor filed its *Emergency Motion for a Temporary Restraining Order and Preliminary Injunction Against Mr. James Dondero* [Adv. Proc. Docket No. 3] (the "Preliminary Injunction Motion"). In its Motion, the Debtor sought entry of a temporary restraining order ("TRO") and preliminary injunction enjoining Mr. Dondero from: (a) communicating (whether orally, in writing, or otherwise), directly or indirectly, with any Board[3] member unless Mr. Dondero's counsel and counsel for the Debtor are included in any such communication; (b) making any express or implied threats of any nature against the Debtor or any of its directors, officers, employees, professionals, or agents; (c) communicating with any of the Debtor's employees, except as it specifically relates to shared services currently provided to

---

[2] Refers to the docket maintained in the above-captioned adversary proceeding (the "Adversary Proceeding").

[3] The term "Board" means the independent directors (the "Independent Directors") that were appointed to the board of Strand Advisors, Inc. ("Strand"), the Debtor's general partner.

affiliates owned or controlled by Mr. Dondero; (d) interfering with or otherwise impeding, directly or indirectly, the Debtor's business, including but not limited to the Debtor's decisions concerning its operations, management, treatment of claims, disposition of assets owned or controlled by the Debtor, and pursuit of the Plan or any alternative to the Plan; and (e) otherwise violating section 362(a) of the Bankruptcy Code (collectively, the "Prohibited Conduct").  *See id.*

3. An evidentiary hearing was held on December 10, 2020. [Docket No. 13] (the "TRO Hearing").  After the Hearing concluded, the Court issued the *Order Granting Debtor's Motion for a Temporary Restraining Order Against James Dondero* [Docket No. 10] (the "TRO"), which enjoined and restrained Mr. Dondero from:

> (2)(a) communicating (whether orally, in writing, or otherwise), directly or indirectly, with any Board member unless Mr. Dondero's counsel and counsel for the Debtor are included in any such communication;
>
> (b) making any express or implied threats of any nature against the Debtor or any of its directors, officers, employees, professionals, or agents;
>
> (c) communicating with any of the Debtor's employees, except as it specifically relates to shared services currently provided to affiliates owned or controlled by Mr. Dondero;
>
> (d) interfering with or otherwise impeding, directly or indirectly, the Debtor's business, including but not limited to the Debtor's decisions concerning its operations, management, treatment of claims, disposition of assets owned or controlled by the Debtor, and pursuit of the Plan or any alternative to the Plan;
>
> (e) otherwise violating section 362(a) of the Bankruptcy Code (collectively, (a)-(e) constitutes the "Prohibited Conduct"); and
>
> (3) causing, encouraging, or conspiring with (a) any entity owned or controlled by him, and/or (b) any person or entity acting on his behalf, from, directly or indirectly, engaging in any Prohibited Conduct.

*Id.*

4. On December 16, 2020, Mr. Dondero filed his *Emergency Motion to Modify Temporary Restraining Order*, seeking modification of the TRO in certain respects. [Docket No.

24] ("Motion to Modify").  On December 23, 2020, Mr. Dondero voluntarily withdrew his Motion to Modify. [Docket No. 29].

5. On January 7, 2021, the Debtor filed its *Motion for an Order Requiring Mr. Dondero to Show Cause Why He Should Not Be Held in Civil Contempt for Violating the TRO* [Docket No. 48] (the "Contempt Motion").[4]  In its Contempt Motion, the Debtor sought an order requiring Mr. Dondero to show why he should not be held in contempt for allegedly violating the TRO for, among other things, as asserted by the Debtor, (a) disposing of the Debtor's property in an attempt to evade discovery; (b) trespassing on the Debtor's property after the Debtor evicted him from its offices precisely because he was interfering with its business; (c) interfering with the Debtor's efforts to execute certain transactions in its capacity as portfolio manager of certain collateralized loan obligations ("CLOs"); and (d) colluding with certain of the Debtor's then-employees. *See id*.  Mr. Dondero disputes the allegations in the Contempt Motion. *See* Adv. Dkt. No. 110.

6. On January 7, 2021, Mr. Dondero filed a response in opposition to the Preliminary Injunction Motion. *See* Adv. Dkt. 52.

7. The following day, January 8, 2021, the Court held an evidentiary hearing on the Preliminary Injunction Motion (the "PI Hearing"). [*See* January 8, 2021 Preliminary Injunction Hearing Transcript] after which it granted the Motion. [Docket No. 59] (the "PI Order"). Specifically, the Court preliminarily enjoined and restrained Mr. Dondero from:

(1) engaging in any Prohibited Conduct (as defined above).

---

[4] The Debtor sought to have the Contempt Motion heard on an expedited basis (Docket No. 51), but the Court denied that request and initially set the Contempt Motion for a hearing on February 5, 2021.  [Docket No. 74].

  (2) causing, encouraging, or conspiring with (a) any entity owned or controlled by him and/or (b) any person or entity acting with him or on his behalf, to, directly or indirectly, engage in any Prohibited Conduct.

  (3) communicating (in person, telephonically, by e-mail, text message or otherwise) with Scott Ellington and/or Isaac Leventon, unless otherwise ordered by the Court.

  (4) physically entering, or virtually entering through the Debtor's computer, email, or information systems, the Debtor's offices located at Crescent Court in Dallas Texas, or any other offices or facilities owned or leased by the Debtor, regardless of any agreements, subleases, or otherwise, held by the Debtor's affiliates or entities owned or controlled by Mr. Dondero, without the prior written permission of Debtor's counsel made to Mr. Dondero's counsel. If Mr. Dondero enters the Debtor's office or other facilities or systems without such permission, such entrance will constitute trespass.

Mr. Dondero was further ordered to attend all future hearings in this Bankruptcy Case by video, unless otherwise ordered by the Court. *See id.*[5] The PI Order specified that its terms would "remain in effect until the date that any plan of reorganization or liquidation resolving the Debtor's case becomes effective, unless otherwise ordered by the Court."[6] Ultimately, the Court found that preliminary injunctive relief: (1) is "necessary to avoid immediate and irreparable harm to the Debtor's estate and reorganization process; (2) the Debtor is likely to succeed on the merits of its underlying claim for injunctive relief; (3) the balance of the equities tip in the Debtor's favor; and (4) such relief serves the public interest." *Id.*

  8. Defendant filed his *Original Answer to Verified Original Complaint for Injunctive Relief* Answer [Adv. Proc. Docket No. 57] (the "<u>Answer</u>") on January 11, 2021.

---

[5] Mr. Dondero contends that the latter three items (namely, parts (3) and (4) above, as well as the requirement that Mr. Dondero attend all future hearings in the Bankruptcy Case) were not requested by the Debtor in its Preliminary Injunction Motion. The Debtor contends that such relief was covered by its request that the Court "grant the Debtor such other and further relief that the Court may deem proper" (*see* AP Docket No. 2 at 4) and that, in any event, the Court has the inherent power to fashion equitable relief as circumstances require.

[6] The Order further specified that Mr. Dondero is not prohibited from (1) "seeking judicial relief upon proper notice or from objecting to any motion filed in this Bankruptcy Case" or (2) "communicating with the committee of unsecured creditors (the "<u>UCC</u>") and its professionals regarding a pot plan." *Id.*

9. On January 12, 2021, Mr. Dondero filed his *Notice of Appeal as of Right or, Alternatively, Notice of Appeal with Motion for Leave to Appeal* to appeal the PI Order. The following day, the Bankruptcy Clerk instructed Mr. Dondero to separately file the notice of appeal and the motion for leave to appeal, and Mr. Dondero complied. *See* AP Docket Nos. 60, 63, and 64.

10. Eight days later, the Bankruptcy Clerk then transmitted the amended notice of appeal and motion for leave to the U.S. District Court for the Northern District of Texas, Dallas Division (the "District Court") and docketed the appeal. At the District Court, Mr. Dondero moved for consideration of the appeal on an expedited basis, which the Debtor opposed.

11. On February 11, 2021, the District Court issued a *Memorandum Opinion and Order* (the "Memorandum Opinion") denying Mr. Dondero's right to appeal the PI Order. *See* Civil Dkt. 11.

12. On March 8, 2021, Mr. Dondero filed his *Petition for Writ of Mandamus* (the "Mandamus") with the U.S. Court of Appeals for the Fifth Circuit (the "Fifth Circuit") in which he challenges the legal validity, scope, and provisions of the PI Order, as well as the District Court's refusal to consider his appeal of the PI Order.

13. On March 9, 2021, the Fifth Circuit docketed the Mandamus proceeding under case number 21-10219. A short time later, the Fifth Circuit, via letter, directed the Debtor to file a response in opposition to the Mandamus by March 16, 2021.

14. On March 10, 2021, Mr. Dondero filed with the Bankruptcy Court his *Motion for Continuance of Contempt Hearing* [AP Docket No. 126] in which he requested that the Bankruptcy Court continue the hearing on the Contempt Motion while the Fifth Circuit considered the Mandamus. The Bankruptcy Court declined to continue the hearing on the Contempt Motion.

15. On March 16, 2021, the Debtor filed with the Fifth Circuit its brief in opposition to the Mandamus.

16. As of the filing of this pre-trial order, the Mandamus proceeding remains pending.

17. On March 22 and March 24, 2021, the Court held an evidentiary hearing on the Contempt Motion. *See* March 22 and March 24, 2021 Hearing Transcripts.  The Contempt Motion is *sub judice*.

18. A trial on the Debtor's claim for permanent injunctive relief is scheduled for the week of May 17, 2021.

## II.    PARTIES' CLAIMS AND DEFENSES

**The following statements and contentions of the respective Parties in this Section reflect the respective views of each Party and are not a joint statement or stipulation. No Party admits, agrees, or acquiesces to any factual or legal contentions, statements, or allegations of any other Party.**

**A.    The Debtor's Claim:**

19. The Debtor's claim for injunctive relief is summarized as follows:

20. Bankruptcy Code section 105(a) authorizes the Court to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).  Bankruptcy Rule 7065 incorporates by reference rule 65 of the Federal Rules of Civil Procedure and authorizes the Court to issue injunctive relief in adversary proceedings.

21. Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 7065, Mr. Dondero should be permanently enjoined from (i) engaging in the Prohibited Conduct (as defined above); (ii) causing, encouraging, or conspiring with (a) any entity owned or controlled by him and/or (b) any person or entity acting with him or on his behalf, to, directly or indirectly, engage in any Prohibited Conduct; or (iii) physically entering, or virtually entering through the Debtor's computer, email, or information systems, the Debtor's offices located at Crescent Court in Dallas Texas, or any

other offices or facilities owned or leased by the Debtor, regardless of any agreements, subleases, or otherwise, held by the Debtor's affiliates or entities owned or controlled by Mr. Dondero, without the prior written permission of Debtor's counsel made to Mr. Dondero's counsel.

22. Beginning almost immediately after the Board demanded his resignation in October 2020, Mr. Dondero has interfered with the Debtor's operations, management of its assets, and liquidation of its business in its chapter 11 case.  This Prohibited Conduct includes, *inter alia*, (i) threatening the Debtor and certain of its officers and employees, (ii) interfering with or otherwise impeding, directly or indirectly, the Debtor's business, including but not limited to the Debtor's decisions concerning its operations, management, treatment of claims, and disposition of assets owned, (iii) attempting to control, manage, and influence the Debtor's operations, (iv) colluding with certain of the Debtor's then-employees to act against the Debtor's interests, and (v) violating section 362(a) of the Bankruptcy Code.

23. Mr. Dondero's interference in the Debtor's operations and threats to the Debtor's officers and employees are embodied in written communications and are without any justification. In the absence of permanent injunctive relief, Mr. Dondero will continue to engage in some or all of the Prohibited Conduct.  Mr. Dondero's continued interference with the Debtor's operations, management of assets, and consummation of its plan of reorganization substantially and irreparably threatens the Debtor, its estate, and its creditors.  This substantial threat of irreparable harm to the Debtor outweighs any harm that injunctive relief would cause to Mr. Dondero.  The Debtor shows actual success on the merits of its claim for permanent injunctive relief because if Mr. Dondero is not permanently enjoined from engaging in the Prohibited Conduct, he will continue to violate section 363(a) of the Bankruptcy Code.  Finally, granting the injunction will not disserve the public interest.

24. Accordingly, Mr. Dondero should be permanently enjoined from engaging in any of the Prohibited Conduct pursuant to section 105(a) of the Bankruptcy Code. Specifically, the Court should permanently enjoin Mr. Dondero from:

(1) engaging in any Prohibited Conduct (as defined above).

(2) causing, encouraging, or conspiring with (a) any entity owned or controlled by him and/or (b) any person or entity acting with him or on his behalf, to, directly or indirectly, engage in any Prohibited Conduct.

(3) communicating (in person, telephonically, by e-mail, text message or otherwise) with Scott Ellington and/or Isaac Leventon, unless otherwise ordered by the Court.

(4) physically entering, or virtually entering through the Debtor's computer, email, or information systems, the Debtor's offices located at Crescent Court in Dallas Texas, or any other offices or facilities owned or leased by the Debtor, regardless of any agreements, subleases, or otherwise, held by the Debtor's affiliates or entities owned or controlled by Mr. Dondero, without the prior written permission of Debtor's counsel made to Mr. Dondero's counsel. If Mr. Dondero enters the Debtor's office or other facilities or systems without such permission, such entrance will constitute trespass.

B.   **Summary of Mr. Dondero's Defense**

**Mr. Dondero's defenses are summarized as follows:**

25. Mr. Dondero disputes that the entry of the permanent injunction requested by the Debtor is appropriate or necessary to prevent irreparable harm to the Debtor or its business. While the Debtor asserts that Mr. Dondero's actions leading up to the filing of the Complaint necessitated a TRO and later a Preliminary Injunction, Mr. Dondero disputes that there were sufficient factual or legal grounds to enter such broad, vague, and unclear orders and that there is a sufficient factual foundation or purported need to enter the broad permanent injunction requested by the Debtor in its Complaint.

26. As Mr. Dondero testified during the hearing on the Contempt Motion, after the entry of the TRO and later the Preliminary Injunction, he changed his behavior and made every effort to comply with the orders.

27. Further, Mr. Dondero has complied with the terms of the TRO and Preliminary Injunction.

28. In addition, even if the Court finds that an injunction is warranted to purportedly protect the implementation of the Debtor's confirmed plan or Debtor's business, there is no need for the entry of the permanent injunction because the plan contains an injunction preventing actions that interfere with the implementation of the plan.

29. Even if the Court finds that a permanent injunction is necessary, the Court should narrowly tailor the terms of the injunction to the least restrictive means necessary to support its purported intention. As written, the permanent injunction is overbroad, vague, not clear, definite, and specific, unjustly restricts Mr. Dondero's legal and constitutional rights, and makes references to matters outside the face of the injunction in violation of applicable law. Among other things, the proposed permanent injunction violates Mr. Dondero's First Amendment rights by restricting all communications of any subject between Mr. Dondero, on the one hand, and two non-Debtor employees and the remaining employees of the Debtor, on the other hand.

30. Moreover, for the first time in this case, in this pre-trial order, the Debtor now asks the Court to enter a permanent injunction restricting permanently all forms of communications of any nature and subject between Dondero and two non-Debtor employees, Isaac Leventon and Scott Ellington. There are absolutely no legal or factual grounds to permanently restrict such communication between Mr. Dondero and two non-party individuals who are no longer employed by the Debtor, and such a restriction would violate the First Amendment rights of Mr. Dondero and Leventon and Ellington. Moreover, this Court lacks the authority and jurisdiction to enjoin such behavior, particularly on a permanent basis as requested here. Finally, this relief is particularly improper here because the Debtor has not requested this relief in this proceeding in

any form, and such request for relief is not contained in the Complaint. The Court lacks the authority and jurisdiction to enter a permanent injunction in this proceeding on matters not requested in the Debtor's Complaint. Among other things, entry of a permanent injunction on such terms violates Mr. Dondero's legal and due process rights, as well as the legal and due process rights of Mr. Leventon and Mr. Ellington.

31. Finally, this Court also lacks the authority and jurisdiction to enter a permanent injunction in this proceeding that contains restrictions that were not requested in the Debtor's Complaint, including the restriction on communications with Isaac Leventon and Scott Ellington, the requirement to attend all hearings in the Bankruptcy Case, and the restriction on appearing at the Debtor's office space. While Mr. Dondero does not intend to violate other laws or restrictions that may be in place, it would be inappropriate for the Court, in the context of this proceeding, to enjoin actions or behavior that were not requested in the Complaint.

32. Mr. Dondero's affirmative defense to the Debtor's Complaint is that "Plaintiff has unclean hands because it has not acted fairly and without fraud and deceit." Answer ¶53.

### III. STATEMENT OF STIPULATED FACTS

**The Parties Stipulate to the Following Facts:**

33. The Debtor is a limited liability partnership formed under the laws of Delaware with a business address at 300 Crescent Court, Suite 700, Dallas, Texas 75201. The Debtor, among other things, serves as the servicer, portfolio manager, or equivalent of certain pooled collateralized loan obligation vehicles (collectively, the "CLOs").

34. Mr. Dondero is an individual residing in Dallas, Texas. Mr. Dondero is the co-founder of the Debtor and was the Debtor's President and Chief Executive Officer until his resignation on January 9, 2020.

35. On October 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Court"), Case No. 19-12239 (CSS) (the "Highland Bankruptcy Case").

36. On October 29, 2019, the U.S. Trustee in the Delaware Court appointed an Official Committee of Unsecured Creditors (the "Committee") with the following members: (a) Redeemer Committee of Highland Crusader Fund, (b) Meta-e Discovery, (c) UBS Securities LLC and UBS AG London Branch (collectively, "UBS"), and (d) Acis Capital Management, L.P. and Acis Capital Management GP LLC (collectively, "Acis").[7]

37. On December 4, 2019, the Delaware Court entered an order transferring venue of the Highland Bankruptcy Case to this Court [Docket No. 186].[8]

38. On January 9, 2020, Mr. Dondero resigned from his roles as an officer and director of Strand and as the Debtor's President and Chief Executive Officer.

39. While resigning from those roles, Mr. Dondero remained an unpaid employee of the Debtor and retained his title as portfolio manager.

40. On October 9, 2020, at the request of the Board, Mr. Dondero resigned from his positions with the Debtor.

41. On December 4, 2020, the Debtor demanded that Mr. Dondero cease and desist from making or initiating, directly or indirectly, any instructions, requests, or demands to the Debtor regarding the terms, timing, or other aspects of any portfolio transactions of any CLO that the Debtor alleges were made.

---

[7] On April 16, 2021, Acis filed its *Notice of Transfer of Claim Other Than for Security* [Docket No. 2212] and transferred its claim to ACMLP Claim, LLC. Acis subsequently resigned as a member of the Committee.

[8] Refers to the main docket for the Highland Bankruptcy Case maintained by this Court.

## IV.    CONTESTED ISSUES OF FACT

**The statements and contentions in this section reflect the respective views of each Party and are not a joint statement or stipulation.  No Party admits, agrees, or acquiesces to any factual or legal contentions, statements, or allegations of any other Party**.

42.    The Debtor incorporates by reference as if fully set forth herein paragraphs 14-149 of the *Debtor's Proposed Findings of Fact and Conclusions of Law* that are being filed contemporaneously with this Pre-Trial Order.

43.    Mr. Dondero incorporates by reference as if fully set forth herein the proposed findings of fact contained in his *Proposed Findings of Fact and Conclusions of Law* that were filed on May 3, 2021.

## V.    CONTESTED ISSUES OF LAW

**The statements and contentions in this section reflect the respective views of each Party and are not a joint statement or stipulation. No Party admits, agrees, or acquiesces to any factual or legal contentions, statements, or allegations of any other Party.**

**A.    The Debtor submits the following Contested Issues of Law:**

44.    Whether, in light of, among other things, (a) the Debtor's status as a debtor in bankruptcy subject to the jurisdiction of this Court, (b) the Settlement Order,[9] (c) the Term Sheet,[10] (d) Mr. Dondero's resignations as the Debtor's President and Chief Executive Officer and later as portfolio manager and an employee, and (e) the authority vested in the Board and Mr. Seery, as the Debtor's Chief Executive Officer and Chief Restructuring Officer, there is any legal or equitable basis for Mr. Dondero to engage in any of the Prohibited Conduct?

---

[9] The term "Settlement Order" refers to the *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339].

[10] The term "Term Sheet" refers to the term sheet attached as Exhibit A to the *Notice of Final Term Sheet* [Docket No. 354-1].

45. Whether the balance of the equities strongly favors the Debtor in its request to engage in business without Mr. Dondero engaging in any Prohibited Conduct?

46. Whether, in the absence of permanent injunctive relief, the Debtor will be irreparably harmed if Mr. Dondero continues to engage in some or all of the Prohibited Conduct, thereby interfering with the Debtor's operations, management of assets, and consummation and implementation of its plan of reorganization, all to the detriment of the Debtor, its estate, and its creditors?

47. Whether, in the absence of permanent injunctive relief, Mr. Dondero will continue to violate section 363(a) of the Bankruptcy Code?

48. Whether injunctive relief would serve the public interest by re-enforcing the implicit mandate in the Bankruptcy Code that debtors are to be managed and controlled only by court-authorized representatives, free from threats and coercion?

49. Whether Mr. Dondero should be permanently enjoined from engaging in any of the Prohibited Conduct pursuant to section 105(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 7065?

**B.    Mr. Dondero submits the following Contested Issues of Law:**

50. Whether the Debtor can meet its burden to show that the entry of the permanent injunction requested in the Complaint meets the standards set forth under applicable law, including 11 U.S.C. § 105(a) and Rule 65.

51. Whether the Debtor can meet its burden to show that it will be irreparably harmed in the absence of entry of the permanent injunction requested in the Complaint.

52. Whether the Debtor can meet its burden to show that the balance of the equities supports the entry of the permanent injunction requested in the Complaint.

53. Whether the Debtor can meet its burden to show that the public interest is served by entry of the permanent injunction requested in the Complaint.

54. Whether the Court has authority under 11 U.S.C. § 105(a) and other applicable law to permanently restrict all forms of communications of any subject between non-debtor individuals (Dondero, on the one hand, and Leventon and/or Ellington on the other hand).

55. Whether the Court has authority under 11 U.S.C. § 105(a) and other applicable law to permanently restrict all forms of communications of any subject between non-debtor individuals (Dondero, on the one hand, and Leventon and/or Ellington on the other hand) when such relief was not requested in the Debtor's Complaint.

56. Whether permanently restricting all forms of communications of any subject between Dondero and the employees of the Debtor violates Dondero's rights under the First Amendment to the U.S. Constitution, including his rights of freedom of speech and freedom of assembly.

57. Whether permanently restricting all forms of communications of any subject between non-debtor individuals (Dondero, on the one hand, and Leventon and/or Ellington on the other hand) violates Dondero's rights under the First Amendment to the U.S. Constitution, including his rights of freedom of speech and freedom of assembly.

58. Whether the Court has jurisdiction to permanently restrict all forms of communications of any subject between non-debtor individuals (Dondero, on the one hand, and Leventon and/or Ellington on the other hand) when such relief was not requested in the Debtor's Complaint.

59. Whether the Court has jurisdiction to permanently restrict all forms of communications of any nature between Dondero and any remaining employees of the Debtor.

60. Whether a permanent injunction of any kind, including with the broad prohibitions requested in the Complaint, is necessary or appropriate given that the Debtor's plan has been confirmed, the vast majority of employees have been terminated, and the plan contains a plan injunction preventing interference with its implementation or execution.

61. Whether the permanent injunction requested by the Debtor in its Complaint violates applicable law, including Rule 65, by, among other things, being overbroad, vague, not clear, definite, and specific, violating Mr. Dondero's First Amendment rights, and making reference to a document or source outside the face of the injunction.

62. Whether the permanent injunction requested by the Debtor in its Complaint violates applicable law, including Rule 65, by, among other things, permanently restricting all communications of any subject between Dondero and (i) two former employees of the Debtor, and (ii) the remaining employees of the Debtor.

63. Whether the Court has authority under section 11 U.S.C. § 105(a) and other applicable law to enter a permanent injunction against Dondero that contains, among other things, restrictions that were not requested by the Debtor in its Complaint, including a requirement that he attend all hearings in the Bankruptcy Case, that he not speak with two individuals not employed by the Debtor, and that he not appear at the Debtor's office space.

64. Whether the Court has jurisdiction to enter a permanent injunction against Dondero that contains, among other things, restrictions that were not requested by the Debtor in its Complaint, including a requirement that he attend all hearings in the Bankruptcy Case, that he not speak with two individuals not employed by the Debtor, and that he not appear at the Debtor's office space.

65. Whether the entry of a permanent injunction is necessary or appropriate given that Mr. Dondero has complied with the terms of the preliminary injunction and the plan contains its own injunction that would prevent any interference with its implementation.

66. Whether the entry of the permanent injunction requested in the Complaint improperly purports to restrict the independent activity of persons and entities that are not a party to this proceeding and violates the legal and due process rights of these third parties.

### VI. ESTIMATE OF THE LENGTH OF TRIAL

67. The Parties believe that the trial of this Adversary Proceeding should take no more than two days.

### VII. LIST OF PENDING OR ANTICIPATED MOTIONS IN THIS ADVERSARY PROCEEDING

68. The Contempt Motion is under advisement.

69. *Defendant's Emergency Motion to Stay Proceedings Pending Resolution of Defendant's Petition for Writ of Mandamus, or, Alternatively, Motion to Continue Trial Setting* [Adv. Dkt. 154] (the "Motion to Stay") is pending and is set for hearing with docket call on May 10, 2021 at 1:30 p.m.

### VIII. ADDITIONAL MATTERS THAT MIGHT AID IN DISPOSITION OF THIS CASE

70. Mr. Dondero contends that a ruling on Dondero's Petition for Writ of Mandamus, which, as of the filing of this pre-trial order, remains pending at the U.S. Court of Appeals for the Fifth Circuit, might aid in the disposition of this case. The Debtor disputes Mr. Dondero's contention for the reasons set forth in its opposition to the Motion to Stay.

### # # # END OF ORDER # # #

Submitted by:

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**BONDS ELLIS EPPICH SCHAFTER JONES LLP**
John Y. Bonds, III (State Bar I.D. No. 02589100)
John T. Wilson (State Bar I.D. No. 24033344)
Bryan Assink (State Bar I.D. No. 24089009)
420 Throckmorton Street, Suite 1000
Forth Worth, Texas 76102
Telephone: (817) 405-6900
Facsimile: (817) 405 6902

*Counsel for Defendant James Dondero*