John Y. Bonds, III
State Bar I.D. No. 02589100
John T. Wilson, IV
State Bar I.D. No. 24033344
Bryan C. Assink
State Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile

**ATTORNEYS FOR DEFENDANT JAMES DONDERO**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 19-34054 |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | § | Chapter 11 |
| | § | |
| Debtor. | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| v. | § | Adversary No. 20-03190 |
| | § | |
| **JAMES D. DONDERO,** | § | |
| | § | |
| Defendant. | § | |

## JAMES DONDERO'S PROPOSED FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

James D. Dondero ("<u>Defendant</u>" or "<u>Dondero</u>"), the defendant in the above-captioned adversary proceeding, hereby submits the following Proposed Findings of Fact and Conclusions of Law in connection with trial on the Plaintiff's Complaint for Injunctive Relief [Adv. Dkt. 1].

**PROPOSED FINDINGS AND CONCLUSIONS**

1. On _____, the Court conducted a trial on Plaintiff's Highland Capital Management, L.P.'s Verified Original Complaint for Injunctive Relief [Adv. Dkt. 1] (the "Complaint"). The Court heard testimony from __ witnesses, including _____ and admitted _____ exhibits into evidence.

2. The Debtor's Complaint seeks permanent injunctive relief against Dondero. Specifically, the Complaint requests that a permanent injunction be entered against Dondero as follows:

3. For the reasons set forth below, the Court finds that the Debtor has *failed* to meet its burden that:

    • it will succeed on the merits of its claim;

    • it will suffer irreparable injury in the absence of injunctive relief;

    • the Debtor has no adequate remedy at law;

    • the likely harm that the Debtor would suffer in the absence of injunctive relief greatly outweighs any harm Mr. Dondero will certainly face by the imposition of a permanent injunction; and

    • the public interest favors the entry of the broad injunction requested by the Debtor.

4. In reaching these conclusions, the Court has considered all of the admissible evidence, including documentary evidence and other proceedings in the Bankruptcy Case specifically referred to herein and for which the Court takes judicial notice.

**I.    PROPOSED FINDINGS OF FACT**

5. James Dondero was the Debtor's Chief Executive Officer as of October 16, 2019 (the "Petition Date"). On or about January 9, 2020, Dondero resigned as CEO through an

agreement with the Committee.

6. Mr. Dondero remained with the Debtor as an unpaid employee and portfolio manager until early October 2020 when the Independent Board requested Mr. Dondero's resignation.

7. While the Debtor has asserted that Mr. Dondero lacks a pecuniary interest in the Debtor and its estate because he does not have a sizeable liquidated claim in a traditional sense, what it fails to acknowledge is that Mr. Dondero and his related entities are also subject to suit on various matters by the estate, and therefore have a pecuniary interest in the estate. In addition, Mr. Dondero and certain of his related entities are investors in funds managed by the Debtor. Thus, while Mr. Dondero is not necessarily a significant creditor in the traditional sense, he does have a significant interest in the estate and an interest in the Debtor's pre and post-confirmation performance. And because of these investments, certain of Mr. Dondero's related entities have interests that, while distinct from Mr. Dondero, are often aligned with him.

**A.      Procedural Background**

8. This action involves a claim for permanent injunctive relief under sections 105(a) and 362(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The operative complaint in this action is *Plaintiff Highland Capital Management, L.P.'s Verified Original Complaint for Injunctive Relief* [Adv. Proc. Docket No. 1] (the "Complaint"), filed on December 7, 2020.

9. On December 7, 2020, the Debtor filed its *Emergency Motion for a Temporary Restraining Order and Preliminary Injunction Against Mr. James Dondero* [Adv. Proc. Docket No. 3] (the "Preliminary Injunction Motion"). In its Motion, the Debtor sought entry of a temporary restraining order ("TRO") and preliminary injunction enjoining Mr. Dondero from: (a)

communicating (whether orally, in writing, or otherwise), directly or indirectly, with any Board[1] member unless Mr. Dondero's counsel and counsel for the Debtor are included in any such communication; (b) making any express or implied threats of any nature against the Debtor or any of its directors, officers, employees, professionals, or agents; (c) communicating with any of the Debtor's employees, except as it specifically relates to shared services currently provided to affiliates owned or controlled by Mr. Dondero; (d) interfering with or otherwise impeding, directly or indirectly, the Debtor's business, including but not limited to the Debtor's decisions concerning its operations, management, treatment of claims, disposition of assets owned or controlled by the Debtor, and pursuit of the Plan or any alternative to the Plan; and (e) otherwise violating section 362(a) of the Bankruptcy Code (collectively, the "Prohibited Conduct"). *See id.*

10. A hearing was held on December 10, 2020. [Docket No. 13] (the "TRO Hearing"). After the hearing concluded, the Court issued the *Order Granting Debtor's Motion for a Temporary Restraining Order Against James Dondero* [Docket No. 10] (the "TRO"), which enjoined and restrained Mr. Dondero from:

(2)(a) communicating (whether orally, in writing, or otherwise), directly or indirectly, with any Board member unless Mr. Dondero's counsel and counsel for the Debtor are included in any such communication;

(b) making any express or implied threats of any nature against the Debtor or any of its directors, officers, employees, professionals, or agents;

(c) communicating with any of the Debtor's employees, except as it specifically relates to shared services currently provided to affiliates owned or controlled by Mr. Dondero;

(d) interfering with or otherwise impeding, directly or indirectly, the Debtor's business, including but not limited to the Debtor's decisions concerning its operations, management, treatment of claims, disposition of assets owned or controlled by the Debtor, and pursuit of the Plan or any alternative to the Plan;

---

[1] The term "Board" means the independent directors (the "Independent Directors") that were appointed to the board of Strand Advisors, Inc. ("Strand"), the Debtor's general partner.

(e) otherwise violating section 362(a) of the Bankruptcy Code (collectively, (a)-(e) constitutes the "Prohibited Conduct"); and

(3) causing, encouraging, or conspiring with (a) any entity owned or controlled by him, and/or (b) any person or entity acting on his behalf, from, directly or indirectly, engaging in any Prohibited Conduct.

*Id.*

11. On December 16, 2020, Mr. Dondero filed his *Emergency Motion to Modify Temporary Restraining Order*, seeking modification of the TRO in certain respects. [Docket No. 24] ("Motion to Modify"). Mr. Dondero contemporaneously filed a request for emergency hearing on the Motion to Modify, which the Court denied. Accordingly, on December 23, 2020, Mr. Dondero voluntarily withdrew his Motion to Modify. [Docket No. 29].

12. On January 7, 2021, the Debtor filed its *Motion for an Order Requiring Mr. Dondero to Show Cause Why He Should Not Be Held in Civil Contempt for Violating the TRO* [Docket No. 48] (the "Contempt Motion").[2] In its Contempt Motion, the Debtor sought an order requiring Mr. Dondero to show why he should not be held in contempt for allegedly violating the TRO. Mr. Dondero disputes the allegations in the Contempt Motion. *See* Adv. Dkt. No. 110.

13. On January 7, 2021, Mr. Dondero filed a response in opposition to the Preliminary Injunction Motion. *See* Adv. Dkt. 52.

14. The following day, January 8, 2021, the Court held an evidentiary hearing on the Preliminary Injunction Motion (the "PI Hearing"). On January 12, 2021, the Court entered an order granting the Motion. [Docket No. 59] (the "PI Order"). Specifically, the Court preliminarily enjoined and restrained Mr. Dondero from:

(1) engaging in any Prohibited Conduct (as defined above).

---

[2] The Debtor sought to have the Contempt Motion heard on an expedited basis (Docket No. 51), but the Court denied that request and initially set the Contempt Motion for a hearing on February 5, 2021. [Docket No. 74].

(2) causing, encouraging, or conspiring with (a) any entity owned or controlled by him and/or (b) any person or entity acting with him or on his behalf, to, directly or indirectly, engage in any Prohibited Conduct.

(3) communicating (in person, telephonically, by e-mail, text message or otherwise) with Scott Ellington and/or Isaac Leventon, unless otherwise ordered by the Court.

(4) physically entering, or virtually entering through the Debtor's computer, email, or information systems, the Debtor's offices located at Crescent Court in Dallas Texas, or any other offices or facilities owned or leased by the Debtor, regardless of any agreements, subleases, or otherwise, held by the Debtor's affiliates or entities owned or controlled by Mr. Dondero, without the prior written permission of Debtor's counsel made to Mr. Dondero's counsel. If Mr. Dondero enters the Debtor's office or other facilities or systems without such permission, such entrance will constitute trespass.

Mr. Dondero was further ordered to attend all future hearings in this Bankruptcy Case by video, unless otherwise ordered by the Court. *See id.* The latter three items, namely, parts (3) and (4), above, as well as the requirement that Mr. Dondero attend all future hearings in the Bankruptcy Case, were not requested by the Debtor in its Preliminary Injunction Motion or in its Complaint. The PI Order specified that its terms would "remain in effect until the date that any plan of reorganization or liquidation resolving the Debtor's case becomes effective, unless otherwise ordered by the Court."[3]

15.     Defendant filed his *Original Answer to Verified Original Complaint for Injunctive Relief* Answer [Adv. Proc. Docket No. 57] (the "Answer") on January 11, 2021.

16.     On January 12, 2021, Mr. Dondero filed a Notice of Appeal as of Right or, Alternatively, Notice of Appeal with Motion for Leave to Appeal to appeal the PI Order. The following day, the Bankruptcy Clerk instructed Mr. Dondero to separately file the notice of appeal and the motion for leave to appeal, and Mr. Dondero complied. *See* Adv. Dkt. Nos. 60, 63, and 64.

---

[3] The Order further specified that Mr. Dondero is not prohibited from (1) "seeking judicial relief upon proper notice or from objecting to any motion filed in this Bankruptcy Case" or  (2) "communicating with the committee of unsecured creditors (the "UCC") and its professionals regarding a pot plan." *Id.*

17. Eight days later, the Bankruptcy Clerk then transmitted the amended notice of appeal and motion for leave to the U.S. District Court for the Northern District of Texas, Dallas Division (the "District Court") and docketed the appeal. At the District Court, Mr. Dondero moved for consideration of the appeal on an expedited basis, which the Debtor opposed.

18. On February 11, 2021, the District Court issued a *Memorandum Opinion and Order* (the "Memorandum Opinion") denying Mr. Dondero's right to appeal the PI Order. *See* Civil Dkt. 11. In the Memorandum Opinion, the District Court ruled that (i) Mr. Dondero could not appeal the PI Order as of right under 28 U.S.C. § 1292(a); and (ii) leave to appeal the PI Order would not be granted under 28 U.S.C. § 158(a)(3) and 28 U.S.C. § 1292(b) because the appeal did not involve a controlling issue of law.

19. On the evening of March 8, 2021, Mr. Dondero filed his *Petition for Writ of Mandamus* (the "Mandamus") with the U.S. Court of Appeals for the Fifth Circuit (the "Fifth Circuit") in which he challenges the legal validity, scope, and provisions of the PI Order, as well as the District Court's refusal to consider his appeal of the PI Order.

20. On March 9, 2021, the Fifth Circuit docketed the Mandamus proceeding under case number 21-10219. A short time later, the Fifth Circuit, via letter, directed the Debtor to file a response in opposition to the Mandamus by March 16, 2021.

21. On March 10, 2021, as a result of the Fifth Circuit's activity on the Mandamus, Mr. Dondero filed with the Bankruptcy Court his *Motion for Continuance of Contempt Hearing* [Adv. Dkt. No. 126] in which he requested that the Bankruptcy Court continue the hearing on the Contempt Motion while the Fifth Circuit considered the Mandamus. The Bankruptcy Court declined to continue the hearing on the Contempt Motion.

22. On March 16, 2021, the Debtor filed with the Fifth Circuit its brief in opposition to the Mandamus.

23. The Mandamus proceeding remains pending.

24. On March 22 and March 24, 2021, the Court held an evidentiary hearing on the Contempt Motion. *See* March 22 and March 24, 2021 Hearing Transcripts. The Court has taken the Contempt Motion under advisement.

25. On April 30, 2021, Mr. Dondero filed *Defendant's Emergency Motion to Stay Proceedings Pending Resolution of Defendant's Petition for Writ of Mandamus, or, Alternatively, Motion to Continue Trial Setting* [Adv. Dkt. 154] (the "Motion to Stay").

**B.     Other Factual Findings**

26. Based on the record before the Court, the Court finds that there are insufficient factual grounds to enter the permanent injunction requested in the Complaint. Among other things, the Debtor has failed to satisfy its burden that the injunction is necessary to prevent irreparable harm to the Debtor, that the public interest weighs in favor of the injunction, that the equities tip in favor of the requested injunction, and that the injunction is narrowly tailored, clear, definite, and specific, and is the least restrictive means necessary to achieve the outcome desired by the Debtor. Accordingly, the Court will deny the relief requested in the Debtor's Complaint.

27. Because it is the Debtor's burden to show that the relief requested in the Complaint is justified, the Court will not (and is not required to) enter detailed factual findings rebutting each of those proposed or asserted by the Debtor. But there are certain facts that the Court found notable, significant, and persuasive in coming to its conclusion that the relief requested in the Complaint should be denied.

28. Of particular importance, the Court finds that Mr. Dondero has complied with the

terms of the Preliminary Injunction since it was entered on January 12, 2021. Further, as testified during the hearing on the Contempt Motion, Mr. Dondero changed his behavior after the TRO and the Preliminary Injunction were entered. While the Debtor has asserted that Mr. Dondero violated the TRO in numerous ways, there have been no allegations that Mr. Dondero violated the Preliminary Injunction, which was entered several days after the Contempt Motion was filed.

29. The Court also finds that, to the extent the Debtor is concerned about purported interreference on a go forward basis, the injunction contained in the Debtor's Plan[4] provides sufficient protection in that it prevents interference with the Debtor's plan. Further, the Preliminary Injunction remains in effect until the Effective Date of the Plan. Accordingly, while the Preliminary Injunction will expire upon the Effective Date, at that time the terms of the Plan injunction will go into effect and protect the Debtor from actions that interfere with the implementation of the Plan.

30. Even if an injunction could be warranted under this record, the Court finds that the permanent injunction proposed by the Debtor does not satisfy applicable law, including section 105(a) and Bankruptcy Rule 7065. Among other things, the injunction is overbroad, ambiguous, not clear, definite, and specific, makes improper references to matters outside the face of the document, and violates Mr. Dondero's First Amendment rights.

31. Of particular significance is the fact that the proposed injunction purports to restrict **all** communications, of any nature and subject matter, between Mr. Dondero, on the one hand, and (i) the Debtor's remaining employees; and (ii) two former employees of the Debtor, Mr. Ellington and Mr. Leventon, on the other hand. The Court finds that this proposed restriction is not narrowly tailored to redress the matters complained of and violates the First Amendment rights of Mr.

---

[4] As used herein, the term "Plan" means the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Docket No. 1808].

Dondero, Mr. Ellington, and Mr. Leventon.

32. The Court further finds that entering an injunction restricting communications with two non-Debtor employees, when those individuals were not a party to this proceeding, and when such relief was not requested in the Debtor's Complaint or in any motion filed before this Court, is improper and deprives the parties of fair notice and due process.

33. In addition, while the Court understands the Debtor's concerns about purported interference, upon careful review of the record, the Court does not believe that Dondero, at least since the filing of this proceeding, has interfered with the Debtor's business or any trades executed by the Debtor.

34. Specifically, the record reflects, as supported by the testimony of both Mr. Dondero and Mr. Seery, no finalized trades were ultimately prevented from occurring. With respect to the trades of December 22, 2020, at that time the Debtor requested that two non-Debtor employees (Matt Pearson and Joe Sowin), both of whom worked for non-Debtor HCMFA, to settle the trades of AVYA and SKY. The record reflects that the Advisors' Chief Compliance Officer, Jason Post, testified at the Funds and Advisors Preliminary Injunction hearing that Dondero did not instruct or pressure him or HCMFA employees not to book Seery's proposed trades. Rather, Dondero merely requested that HCMFA look at the trades from a compliance perspective.[5] After review of the proposed trades by compliance, compliance made the independent decision not to have HCMFA book the trades because they had not been run through its pre-trade compliance process. As an independent entity with no apparent written agreement with the Debtor requiring it to settle these trades, HCMFA was well within its rights to temporarily not book the trades to investigate

---

[5] *See* January 26, 2021 Hearing Transcript, p. 95: 13-15 ("My recollection is I encouraged Compliance to look at those trades") and p. 96: 3-4 ("I never gave instructions not to settle the trades that occurred, but that's a different ball of wax.").

whether they satisfied its compliance process.[6] There was no agreed trade that was prevented from occurring,[7] and Mr. Seery testified that every trade that he initiated was closed and no trades failed.

35. Moreover, as an additional reason why injunctive relief is not necessary in this case, the Court does not believe that the activity taken by the Funds and Advisors, and their counsel, constitutes activity that interfered with the Debtor or its business.

36. First, request letters sent by counsel for the Funds and Advisors letters were not sent by Dondero, but by counsel for third parties, the Funds and Advisors, who made an independent decision to send these letters on behalf of their clients. While Dondero is the President of the Advisors, there is no evidence that he is solely in "control" of either the Funds or Advisors, and the evidence shows that the Funds each have an independent board of directors. At any rate, as independent entities with independent counsel, these entities were free to make requests of the Debtor, in writing and subject to the automatic stay. The Debtor was free to reject the requests, which it did. Neither the Funds and Advisors, nor Dondero, took any subsequent action on these requests after they were rejected. Moreover, the Debtor has failed to show any damage or harm resulting from this activity.

37. Finally, the Court further finds that most of the relief requested in the Debtor's Complaint, and the proposed permanent injunction, are moot. For example, most of the employees of the Debtor have been terminated. In addition, section 362(a) of the Bankruptcy Code ceases to be in effect after the Effective Date of a confirmed plan. Accordingly, this provision of the proposed permanent injunction is moot upon the Effective Date.

---

[6] Mr. Seery has testified at his deposition that he is not aware of any written contract or agreement (other than potentially shared services) between the Debtor and HCMFA that would require HCMFA to settle these trades. See January 20, 2021 Seery Deposition Transcript, p. 50: 3-8.

[7] *See* January 26, 2021 Hearing Transcript, p. 96: 3-4 ("I never gave instructions not to settle the trades that occurred, but that's a different ball of wax."); Seery Deposition Transcript, p. 55:13-14 ("I don't think we had an agreed trade that didn't close.").

38. In sum, the Debtor has failed to meet its burden that the extraordinary and broad relief requested in the Complaint is justified. The Court finds that permanent injunctive relief is not warranted on these facts.

## II. PROPOSED CONCLUSIONS OF LAW

39. Injunctions are required to be definite and specific to be enforceable. Rule 65(d) (as incorporated by Bankruptcy Rule 7065) of the Federal Rules of Civil Procedure provides that "[e]very order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." The specificity requirement "ensures that a party who is restrained by a preliminary injunction knows clearly what conduct is being restrained and why." *MillerCoors LLC v. Anheuser-Busch Cos., LLC*, 940 F.3d 922, 924 (7th Cir. 2019).

40. "The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (per curiam). Accordingly, an injunction "cannot be so general as to leave the party open to the hazard of conducting business in the mistaken belief that it is not prohibited by the injunction and thus make him vulnerable to prosecution for contempt." *Williams v. United States*, 402 F.2d 47, 48 (10th Cir. 1967).

41. Based on the record before the Court, the Court finds that there are insufficient grounds to enter the permanent injunction requested in the Complaint. Among other things, the Debtor has failed to satisfy its burden that the injunction is necessary to prevent irreparable harm to the Debtor, that the public interest weighs in favor of the injunction, that the equities tip in favor

of the requested injunction, and that the injunction is narrowly tailored, clear, definite, and specific, and is the least restrictive means necessary to achieve the outcome desired by the Debtor. Accordingly, the Court will deny the relief requested in the Debtor's Complaint.

42. Even if an injunction could be warranted under this record, the Court finds that the permanent injunction proposed by the Debtor does not satisfy applicable law, including section 105(a) and Bankruptcy Rule 7065. Among other things, the injunction is overbroad, ambiguous, not clear, definite, and specific, makes improper references to matters outside the face of the document, and violates Mr. Dondero's First Amendment rights.

43. Of particular significance is the fact that the proposed injunction purports to restrict **all** communications, of any nature and subject matter, between Mr. Dondero, on the one hand, and (i) the Debtor's remaining employees; and (ii) two former employees of the Debtor, Mr. Ellington and Mr. Leventon, on the other hand.

44. Prior restraints on freedom of speech such as those proposed by the Debtor have long been disfavored in American law. *Near v. Minnesota*, 283 U.S. 697 (1931). While a prior restraint is not unconstitutional per se, there is a heavy presumption against its constitutionality. *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558-59 (1975)

45. An injunction restricting all communication (as is the case here) acts as a prior restraint and thus bears a heavy presumption against constitutional validity. *See Auburn Police Union v. Carpenter*, 8 F.3d 886, 903 (1st Cir. 1993). A prior restraint "must be narrowly drawn and cannot be upheld if reasonable alternatives are available having a lesser impact on First Amendment freedoms." *Bernard v. Gulf Oil Co.*, 619 F.2d 459, 467 (5th Cir. 1980) (citing *CBS, Inc. v. Young*, 522 F.2d 234, 238 (6th Cir. 1975) and *Nebraska Press Association v. Stuart, supra; Carroll v. Commissioners of Princess Anne*, 393 U.S. 175 (1968)).

46. The Supreme Court has directed judges to scrutinize injunctions restricting speech carefully and ensure that they are "no broader than necessary to achieve [their] desired goals." *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 764-65, 114 S. Ct. 2516 (1994).

47. Here, the scope of this provision of the proposed injunction is too broad because it restricts all communications, of any kind, and of any nature, between Mr. Dondero and anyone employed by the Debtor, as well as, purportedly, two former employees of the Debtor.

48. Accordingly, the Court finds that this proposed restriction on all communications is not narrowly tailored to redress the matters complained of and violates the First Amendment rights of Mr. Dondero, Mr. Ellington, and Mr. Leventon. *See Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 183 (1968) ("An order issued in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted.").[8]

49. The Court further finds that entering an injunction restricting communications with two non-Debtor employees, when those individuals were not a party to this proceeding, and when such relief was not requested in the Debtor's Complaint or in any motion filed before this Court, is improper and deprives the parties of fair notice and due process.

50. The Court also finds that the provision of the permanent injunction preventing "interference" with the Debtor's business is overbroad, vague, not clear, definite, and specific.

51. In addition, in violation of Rule 65(d), the portion of the injunction restricting violations of section 362(a) does not include any specific and identifiable prohibitions. Instead, it

---

[8] The Court notes that it believes Mr. Dondero has shown a likelihood of success on the merits of his Mandamus action to the Fifth Circuit. The Court believes that the Fifth Circuit, given its prompt attention to the Mandamus immediately upon its filing, is likely closely scrutinizing the Constitutional concerns raised by the permanent injunction. Accordingly, the Court believes this is another fact that demonstrates that the relief requested by the Debtor is too broad and deprives Mr. Dondero of his First Amendment rights.

refers to an outside document or source and purports to make matters contained therein (11 U.S.C. § 362(a)) a violation of the injunction. This plainly violates Rule 65(d)(1)(C) because it refers to a document or source outside the face of the order instead of describing in reasonable detail the specific acts restrained. *See* Fed. R. Civ. P. 65(d). Mr. Dondero cannot ascertain from the face of the preliminary injunction what acts may or may not be prohibited by this provision.

52. In sum, the Court finds and concludes that the Debtor has failed to meet its burden to show that the permanent injunctive relief is warranted under applicable Fifth Circuit law. The permanent injunction requested by the Debtor is not necessary or warranted under the facts. Moreover, the terms of the proposed injunction are overbroad, not clear and specific, and deprive Mr. Dondero and others of their First Amendment Rights.

### CONCLUSION

53. For the foregoing reasons, the Court denies the Debtor's request for permanent injunctive relief and will enter a judgment in favor of Dondero.

54. The Court reserves the right to amend or modify any of the foregoing findings of fact or conclusions of law and to make such additional findings and conclusions as it deems advisable.

55. If any of the foregoing findings of fact may be more properly deemed conclusions of law, or *vice versa*, such finding of fact shall constitute a conclusion of law and *vice versa*.

### # # # END OF FINDINGS AND CONCLUSIONS # # #

Dated: May 3, 2021

Respectfully submitted,

*/s/ Bryan C. Assink*
John Y. Bonds, III
State Bar I.D. No. 02589100
John T. Wilson IV
State Bar I.D. No. 24033344
Bryan C. Assink
State Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: john@bondsellis.com
Email: john.wilson@bondsellis.com
Email: bryan.assink@bondsellis.com

**ATTORNEYS FOR DEFENDANT JAMES DONDERO**

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that, on May 3, 2021, a true and correct copy of the foregoing document was served via the Court's CM/ECF system on counsel for the Plaintiff.

*/s/ Bryan C. Assink*
Bryan C. Assink